**Earl O. PICKENS, Plaintiff,**

v.

**KANAWHA RIVER TOWING, et al., Defendants.**

No. C–1–93–790.

United States District Court, S.D. Ohio, Western Division.

Jan. 23, 1996.

James Burdette Helmer, Jr., Helmer Lugbill Martins & Neff, Cincinnati, OH, Meredith Lynn Lawrence, Crestview Hills, KY, for Earl O. Pickens.

Todd Matthew Powers, Schroeder Maundrell Barbiere & Powers, Cincinnati, OH, Thomas W. Pettit, Vinson Mesh Pettit Colburn & Damron, Huntington, WV, for Kanawha River Towing Inc., Campbell Transportation Company Inc.

Thomas W. Pettit, Vinson, Meek, Lewis & Pettit, L.C., Huntington, WV, for G & C Towing Inc.

Glenn Virgil Whitaker, Victor A. Walton, Jr., Vorys, Sater, Seymour & Pease, Cincinnati, OH, Ridgway M. Hall, Crowell & Moring, Washington, DC, for GLR Constructors, Dillingham Construction Company NA, Inc., Harbert International, Inc.

Glenn Virgil Whitaker, Victor A. Walton, Jr., Vorys, Sater, Seymour & Pease, Cincinnati, OH, for SJ Groves & Son Co., Guy F. Atkinson Const.

Gerald Francis Kaminski, U.S. Attorney, Cincinnati, OH, for the United States.

## ORDER

SPIEGEL, Senior District Judge.

### MOTIONS CONSIDERED

This matter is before the Court on Defendants Kanawha River Towing and Campbell Transportation Company's (hereinafter "KRT") Motion to Dismiss (doc. 31), to which the Relator Earl Pickens responded (doc. 33), and KRT replied (doc. 37), and Defendant G & C Towing Incorporated's Motion to Dismiss (doc. 35), to which Mr. Pickens responded (doc. 42). The Court held a hearing on the motions on December 14, 1995.

### BACKGROUND

The Relator Earl Pickens filed a two count Complaint on behalf of the United States under the False Claims Act ("FCA"). 31 U.S.C. § 3729 *et seq.* This *Qui Tam* action was filed under seal in November 1993. The United States investigated the claims and chose not to intervene. Thereafter, the Complaint was unsealed and served upon the Defendants in July 1995.

Mr. Pickens alleges that the Defendants violated the Federal Water Pollution Control Act (more commonly referred to as the Clean Water Act ("CWA")), 33 U.S.C. § 1251 *et seq.* Mr. Pickens accuses the Defendants of polluting the Ohio River during the construction and repair of the Gallipolis Lock and Dam. Defendant GLR Constructors,[1] a joint venture between Guy F. Atkinson Construction Co., Dillingham Construction Co., Habert International, Inc., and S.J. Groves and Sons Company, contracted with the United States to complete the Gallipolis project. Defendants KRT and G & C Towing allegedly were subcontractors of GLR Constructors on the Gallipolis Dam project. KRT has employed Mr. Pickens since March 1992. He previously worked for G & C Towing. KRT purchased the assets of G & C Towing. KRT then assumed G & C Towing's duties

---

1. GLR Constructors is not a party to this motion. The Court struck GLR's Motion to Dismiss because the motion raised issues beyond the pleadings. See Document 41.

under G & C Towing's contract with GLR Constructors.

These subcontractors allegedly provided helper boat services during the construction project. In providing said services, Mr. Pickens claims that the tugboat M/V Muskogee dumped its bilge into the Ohio River. Mr. Pickens further alleges that the Defendants failed to keep records of the products discharged from the vessel as allegedly required by the CWA.

## RELATOR CLAIM

Count I alleges that the Defendants submitted false claims under 31 U.S.C. § 3729(a)(2). Specifically, Mr. Pickens alleges that GLR's contract with the United States requires that work on the project be completed in compliance with the CWA. KRT and G & C Towing's subcontracts also require compliance with the CWA. KRT and G & C Towing made false statements by submitting their bills to GLR without acknowledging they breached the contract by violating the CWA. Pickens asserts that when GLR submitted their invoice for payment it certified that it was in compliance with the contract. Accordingly, when GLR sought payment, while it was not in compliance with the contract, it submitted a false claim.

In Count II, Pickens alleges a "reverse false claim" under 31 U.S.C. § 3729(a)(7). A reverse false claim occurs when a defendant omits information that it is required to provide or maintain in order to avoid a payment obligation to the United States. Pickens alleges that the Defendants failed to report their pollution, or keep transfer records as required by the CWA and its regulations. By failing to maintain these records, the Defendants were able to avoid the payment of fines owed to the United States under the CWA. Such avoidance is a reverse false claim.

## STANDARD OF REVIEW

A motion to dismiss for failure to state a claim upon which relief can be granted under Fed.R.Civ.P. 12(b)(6) must be viewed in the light most favorable to the party opposing the motion. *Great Lakes Steel v. Deggen-*

*dorf,* 716 F.2d 1101, 1105 (6th Cir.1983). "[T]he court must accept as true all the well-plead allegations in the complaint under attack." *Id.* The court may grant the motion only "if it appears beyond doubt that the plaintiffs can prove no set of facts in support of their claims which would entitle them to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Scheid v. Fanny Farmer Candy Shops, Inc.,* 859 F.2d 434, 436 (6th Cir.1988); *Balderaz v. Porter,* 578 F.Supp. 1491, 1494 (S.D.Ohio 1983).

## DISCUSSION

The main issue raised by the motions to dismiss is whether Pickens' allegations constitute "false" claims. First, does a subcontractor submit a false claim by receiving payment for services that were not in compliance with the contract. Second, is the failure to log or report a pollution incident a reverse "false" claim. The Defendants also raise several preliminary issues that the Court will first address.

## PREEMPTION

The Defendants argue that Mr. Pickens' claims under the FCA are preempted by the more specific remedial provisions of the CWA under *Middlesex County Sewerage Authority v. National Sea Clammers Assoc.,* 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981). In other words, a specific act with comprehensive enforcement provisions precludes enforcement of that statute by a separate act. We find this argument unpersuasive in this context.

Generally federal law disfavors preemption of one federal law by another, unless there is an "express manifestation of preemptive intent." *United States v. General Dynamics,* 19 F.3d 770, 774 (2d Cir.1994). Courts should give effect to two statutes that overlap unless there is a " 'positive repugnancy' between [the] two laws." *Connecticut National Bank v. Germain,* 503 U.S. 249, 253, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391 (1992) (quoting *Wood v. United States,* 16 Pet. 342, 363, 10 L.Ed. 987 (1842)).

Furthermore, *Sea Clammers* appears to be limited to attempts to enforce a more specific federal statute by use of 42 U.S.C. § 1983. Section 1983 creates a general means for remedying violations of federal rights by state actors, but does not create any substantive rights. *United States ex rel. Fallon v. Accudyne Corporation,* 880 F.Supp. 636, 639 (W.D.Wis.1995) [hereinafter *Fallon I*] (citing *Albright v. Oliver,* —— U.S. ——, ——, 114 S.Ct. 807, 811, 127 L.Ed.2d 114 (1994)). In other words, the utilization of § 1983 would be redundant if the statute that creates the right to be vindicated already provides specific remedies. Accordingly, implied preemption is only appropriate for purely remedial acts [2] when the statute to be enforced provides its own specific and detailed remedies.

■ The False Claims Act is not a purely remedial statute. It provides remedies for different conduct than the conduct covered by the CWA. *Id.* The FCA provides a remedy for defrauding the government, while the CWA provides a remedy for water pollution. In addition, the FCA provides for relief distinctive from the CWA. The FCA provides for fraud damages and statutory penalties, while under the CWA the Court can compel clean-up as well as award damages for environmental contamination.[3]

### RULE 9(b)

■ KRT and G & C Towing also argue that Mr. Pickens has failed to plead the elements of fraud with particularity as required by Rule 9 of the Federal Rules of Civil Procedure. The Court recognizes that we have applied Rule 9(b) to *qui tam* actions in the past since such actions are essentially claims of fraud. *See e.g., Burch ex rel. United States v. Piqua Engineering, Inc.,* 145 F.R.D. 452, 454 n. 2 (S.D.Ohio 1992). Rule 9(b) has an exception when the relevant information is in the exclusive possession of the opposing party. *Wilkins ex rel. United*

*States v. State of Ohio,* 885 F.Supp. 1055, 1061 (S.D.Ohio 1995).

■ The Sixth Circuit requires that a fraud claim include the following information: (1) the time; (2) the place; (3) the specific content of the fraud; and (4) the identities of the parties participating in the fraud. *Michaels Building Co. v. Ameritrust Co.,* 848 F.2d 674, 679 (6th Cir.1988). In other words, the pleading must place the defendant on notice of the specific misconduct or fraudulent acts of which the plaintiff complains. *Burch,* 145 F.R.D. at 455.

■ KRT argues that the Mr. Pickens' Complaint "falls woefully short" of the requirements of Rule 9(b). The Court disagrees. KRT cites Paragraphs 30 and 36 of the Complaint which merely repeat the language of the FCA. KRT, however, ignores the rest of the Complaint which details the alleged misconduct. Mr. Pickens provides a description of the parties involved, the exact contract at issue, and the provision of the contract that pertains to the misconduct alleged and the approximate time of the misconduct. All of which provides the Defendants adequate notice of the alleged fraud.

### COUNT I

■ The Defendants, KRT and G & C Towing, argue that Mr. Pickens failed to allege that the Defendants made any affirmative false representations to the government. KRT relies on *United States ex rel. Stevens v. McGinnis, Inc.,* 1994 WL 799421 (S.D.Ohio Oct. 26, 1994), for the proposition that a subcontractor does not violate the FCA when it submits false invoices to a government contractor for payment. KRT's reliance upon *McGinnis* is misplaced. The False Claims Act creates a cause of action against a subcontractor who causes a general contractor to submit a false claim to the United States. *United States v. Bornstein,* 423 U.S. 303, 309, 96 S.Ct. 523, 527–28, 46 L.Ed.2d 514

---

**2.** When the Court uses the term "remedial acts," we refer to "[l]egislation providing means or method whereby causes of action may be effectuated, wrongs redressed and relief obtained...." Black's Law Dictionary, (5th ed. 1979) (citation omitted). 42 U.S.C. § 1983 is an example of a remedial act.

**3.** Defendants argue that since the Plaintiff's prayer for relief seeks damages available only under the CWA, the Complaint under the FCA must be dismissed. See Document 31 at 19. It is inappropriate, however, to dismiss a complaint based solely upon a faulty prayer for relief.

(1976) (citation omitted). In fact, the Supreme Court has long held that the FCA reaches anyone who knowingly assists in causing a government payment based upon a false claim "without regard to whether that person had direct contractual relations with the government." *United States ex rel. Marcus v. Hess,* 317 U.S. 537, 544–45, 63 S.Ct. 379, 384, 87 L.Ed. 443 (1943).

Although *McGinnis* is factually similar to the case at bar, it supports a cause of action in this instance. McGinnis and the defendants here, KRT and G & C Towing, are all tugboat operators accused of dumping their bilges while performing duties for a government contractor. *McGinnis,* 1994 WL 799421. The important distinguishing factor in *McGinnis* is the court's finding that the contractor did not bill the government for McGinnis' work. *Id.* at *5. There cannot be a false claim since the government did not pay for the work allegedly done in violation of the CWA. *Id.* Accordingly, McGinnis did not cause a false claim because it never made a claim to the government. On the other hand, a false claim would exist if KRT and G & C Towing dumped waste in violation of the CWA and then claimed that they complied with the act.

█ Defendants counter that in order to state a claim under § 3729(a)(2) Pickens' Complaint must allege that the Defendants made an *affirmative* false statement to the government. Other courts have found that § 3729(a)(2) requires "some form of affirmative statement." *United States ex rel. Fallon v. Accudyne Corp.,* 1995 U.S.Dist. LEXIS 11931 *45 [hereinafter *Fallon* II]. Pickens' Complaint alleges that the subcontractors made false statements. Although the allegation is merely a restatement of the language of § 3729(a)(2), under 12(b)(6) we must accept as true Pickens' allegation that the Defendants did cause a false statement to be made in order to get a claim paid.

An affirmative statement, however, is not necessary to state a cause of action under § 3729(a)(1) of the FCA. *See Id.* at *45 ("[A] contractor who knowingly fails to perform a material requirement of its contract, ... yet seeks or receives payment as if it fully performed without disclosing the nonperfor-

mance, has presented a false claim to the government and may be liable therefor."); *Ab–Tech Construction v. United States,* 31 Fed.Cl. 429, 434 (1994) (holding that payment vouchers were implied certification of continued adherence to program's requirements causing government to pay funds in mistaken belief it was furthering program goals). The FCA's legislative history confirms such a view of Section (a)(1). "[E]ach and every claim submitted under a contract, loan guarantee, or other agreement which was originally obtained by means of false statements or other corrupt or fraudulent conduct, *or in violation of any statute or applicable regulation,* constitutes a false claim." S.Rep. No. 345, 99th Cong., 2d Sess. 9 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5266, 5274 (emphasis added).

In *Fallon* II, the Relator accused his employer of submitting a false claim by disregarding the environmental compliance provisions of their government contract. The *Fallon* II court found that an allegation that a party sought payment from the government while in material noncompliance of a provision of the contract states a claim under § 3729(a)(1). Furthermore, the court stated that the standard government certification form might constitute an affirmative false statement under § 3729(a)(2).

Accordingly, it does not appear beyond a "doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley,* 355 U.S. at 45–46, 78 S.Ct. at 102. Defendants claim Pickens' assertion that they defrauded the government is too tenuous to survive a motion to dismiss. The connection may be tenuous, "but the connection is sufficient to overcome the burden of a 12(b)(6) motion." *United States ex rel. Roy v. Anthony,* 914 F.Supp. 1504, 1506 (S.D.Ohio 1994). Therefore, the Court DENIES Defendants' motions to dismiss Count I.

## COUNT II

Defendants raise the following defenses to Count II: 1) Pickens cannot recover under the FCA by merely alleging a CWA violation;

2) Pickens has not properly alleged that the Defendants violated the CWA; and 3) the CWA does not apply to their actions.

■ Count II is a reverse false claim under 31 U.S.C. § 3729(a)(7). A claim under § 3729(a)(7) requires proof: (1) that the defendant made, used, or caused to be used a record or statement to conceal, avoid, or decrease an obligation to the United States; (2) that the statement or record was false; (3) that the defendant knew that the statement was false; and (4) that the United States suffered damages as a result.

Pickens alleges that the Defendants, as operators of the M/V Muskogee, discharged its bilge into the Ohio. The Defendants then failed to report this discharge, as required by the CWA. Pickens asserts that the failure to report a CWA violation as required by law amounts to a false claim. Pickens also claims that the failure to record the bilge pumping in the vessel's log amounts to a false record. In addition, Pickens argues that the CWA regulations require the Defendants to maintain records of all hazardous substances transfers.[4]

An initial question is whether a FCA claim exists merely upon the failure to abide by a reporting requirement. In *McGinnis*, the court implied that the failure to report did create a FCA violation. *McGinnis*, at *7 ("Violations of the reporting requirements of the Clean Water Act which arguably are misrepresentations to the government give rise to liability under 31 U.S.C. § 3729(a)(7) of the False Claims Act."). Another court, however, has interpreted *McGinnis* to imply that the plaintiff must prove that the defendant supplied the government false information. *Wilkins*, 885 F.Supp. at 1064.

■ We agree that a reverse false claim requires more than a mere failure to report a violation of another statute. The language of § 3729(a)(7) creates liability for one who "makes, uses, or causes to be made or used, a false record or statement." This mandates that the defendant prepare, create or submit

some type of statement or record that is false. A failure to report does not count as a statement or record.

Despite this conclusion, the Court finds that Pickens has stated a claim under 31 U.S.C. § 3729(a)(7). Pickens alleges that the Defendants pumped the M/V Muskogee's bilge, containing hazardous substances, into the Ohio River. Defendants also allegedly failed to record this action in the vessel's log. Defendants counter that they have no obligation to make a log. The FCA, however, does not require that the false record be one that the defendant is under an obligation by law to maintain. Therefore, even if M/V Muskogee is not required to keep a log, it may still constitute a false record or statement.

The vessel's log is clearly a record. If the log excludes a major event that it should ordinarily contain, the record is a false one. If the government relies upon or otherwise reviews such logs as part of its regulatory role, then the Defendants would have submitted a false report in order to avoid an obligation to the government.[5]

The Defendants counter that even if a CWA violation can create a false claim, Mr. Pickens has not sufficiently alleged a CWA violation. Defendants argue that a violation requires more than the mere discharge of any pollutant, but instead requires the discharge of hazardous substances in excess of a regulated amount. Furthermore, the CWA reporting requirements do not require tugboat operators to maintain records of all products transferred to or from the vessel. Nor is there any statutory requirement that a tugboat document all discharges. Finally, Defendants assert that the CWA section at issue does not apply to tugboats. Instead, Defendants' assert that the CWA applies to vessels transferring cargo, not discharging bilges.

■ The Defendants reading of the CWA and the applicable regulations is incorrect. None of the parties cite the regulations that

---

4. The Court, however, finds that transfer provisions of 33 C.F.R. § 155.700 *et seq.* do not apply to tugboats.

5. Pickens has moved to amend his complaint to add an allegation that the Coast Guard routinely inspects vessels' logs.

are pertinent to the allegations here. Section 311 of the CWA prohibits "the discharge of oil or other hazardous substances into or upon the navigable waters of the United States ... in such quantities as may be harmful as determined by the President...." 33 U.S.C. § 1321(b)(3). The M/V Muskogee is a vessel regulated by the CWA. The regulations define a vessel as "every description of watercraft or other artificial contrivance used, or capable of being used, as a means of transportation on water...." 40 C.F.R. § 110.1. The regulations specifically exclude discharges of oil from engines, "but discharges of such oil accumulated in a vessel's bilges shall not be so exempt." 40 C.F.R. § 110.7. As a result, the CWA does apply to the discharge of a tugboat's bilge.

 Defendants also argue that Pickens failed to allege that they discharged pollutants in sufficient quantities to violate the CWA. First, the Relator need not allege that a specific amount of pollutants were discharged in order to state a CWA violation. Furthermore, Pickens' allegation that the M/V Muskogee dumped its bilge sufficiently infers a violation of the CWA.

> For purposes of section 311(b) of the Act, discharges of oil into or upon the navigable waters of the United States ... in such quantities that it has been determined may be harmful to the public health or welfare of the United States, except as provided in § 110.7 of this part, include discharges of oil that:
>
> (a) Violate applicable water quality standards, or
>
> (b) Cause a film or sheen upon or discoloration of the surface of the water or the adjoining shoreline.

40 C.F.R. 110.3. A relatively small amount of oil will produce a sheen. A tugboat's bilge contains enough oil to create a sheen upon the water. Accordingly, the Court finds that the Relator has made sufficient allegations of a CWA violation to state a claim under 31 U.S.C. § 3729(a)(7).

---

**6.** The Court takes judicial notice that West Virgi-

## VENUE

Finally, Defendants argue that venue is improper in the Southern District of Ohio under 28 U.S.C. § 1391 and 31 U.S.C. § 3732(a). Section 3732(a) states that an "action under section 3730 may be brought in any district in which the defendant or, in the case of multiple defendants, any one defendant can be found, resides, transacts business, or in which any act proscribed by section 3729 occurred." Defendants argue that Pickens provides no facts that the Defendants transact business in Ohio. Furthermore, the events leading to the FCA violation occurred at the Gallipolis Lock and Dam which is in West Virginia.[6]

 The Court, however, finds that some of the acts proscribed by section 3729 did occur in the Southern District of Ohio. Pickens claims arise under the FCA. The false claim is partially based on the contract with the Army Corps of Engineers based in Cincinnati to repair the Gallipolis Lock and Dam. Therefore, any statement by the Defendants certifying their compliance with the contract would have occurred in Cincinnati. Any claims for payment under the contract would have been sent to and processed in Cincinnati. Accordingly, the alleged false claims would have occurred in part in the Southern District of Ohio.

## CONCLUSION

The Court hereby DENIES the Defendants' Motions to Dismiss. Furthermore, the Court GRANTS Relator's Motion to Amend his Complaint as noted in footnote 5.

SO ORDERED

nia, not Ohio, owns the Ohio River at Gallipolis.