UNITED STATES of America ex rel. AMERICAN TEXTILE MANUFACTURERS INSTITUTE INC., Plaintiffs,

v.

THE LIMITED, INC.; The Limited London–Paris–New York, Inc.; Limited Too, Inc.; Intimate Brands, Inc.; Victoria's Secret Stores, Inc.; Victoria's Secret Catalogue, Inc.; Cacique, Inc.; Express, Inc.; Lerner New York Inc.; Lane Bryant, Inc.; Henri Bendel, Inc.; Structure, Inc.; Abercrombie & Fitch, Inc. Mast Industries, Inc.; Tarrant Apparel Group, d/b/a Fashion Resource, Inc.; Gerard Guez; and Todd Kay, Defendants.

No. C2–97–776.

United States District Court,
S.D. Ohio,
Western Division.

July 9, 1997.

Ann Louise Lugbill, James Burdette Helmer, Jr., Helmer, Lugbill, Martins & Morgan, Cincinnati, OH, Paul D. Cullen, Sr., Cullen & O'Connell, Washington, DC, Robert C. Bonner, Gibson, Dunn & Crutcher, Los Angeles, CA, Joseph A. Black, Diana E. Stein, K. Michael O'Connell, Cullen & O'Connell, Washington, DC, for plaintiffs.

David Freeman Axelrod, James E. Phillips, Michael J. Canter, Robert Neal Webner, Vorys, Sater, Seymour & Pease, Columbus, OH, John T. Boese, Fried, Frank, Harris, Shriver & Jacobson, Washington, DC, for The Limited, Inc.

Michael Joseph Canter, Vorys, Sater, Seymour & Pease, Columbus, OH, John J. Quinn, Arnold & Porter, Los Angeles, CA, John T. Boese, Fried, Frank, Harris, Shriver & Jacobson, Washington, DC, for The Limited London–Paris–New York, Inc.

David Freeman Axelrod, James E. Phillips, Michael J. Canter, Robert Neal Webner, Vorys, Sater, Seymour & Pease, Columbus, OH, John T. Boese, Fried, Frank, Harris, Shriver & Jacobson, Washington, DC, for Limited Too, Inc.

Michael Joseph Canter, Vorys, Sater, Seymour & Pease, Columbus, OH, John J. Quinn, Arnold & Porter, Los Angeles, CA, John T. Boese, Fried, Frank, Harris, Shriver & Jacobson, Washington, DC, for Intimate Brands, Inc., Victoria's Secret Catalogue, Inc., Victoria's Secret Stores, Inc., Cacique, Inc., Express, Inc., Lerner New York, Inc., Lane Bryant, Inc., Henri Bendel, Inc., Structure, Inc. and Mast Industries, Inc.

David Joseph Young, Squire, Sanders & Dempsey, Columbus, OH, for Tarrant Apparel Group and Gerard Guez.

David Joseph Young, Squire, Sanders & Dempsey, Columbus, OH, Marc P. Goodman, Ciema Lili Salem, Leonard D. Venger, Cameron A. Port, John F. Libby, Manatt, Phelps & Phillips, Los Angeles, CA, for Todd Kay.

James Evan Rattan, United States Attorney's Office, Columbus, OH, Philip A. Shaikun, U.S. Department of Justice, Civil Division, Washington, DC, for United States of America, amicus.

## ORDER

BECKWITH, District Judge.

On September 25, 1996, Relator, American Textile Manufacturers Institute, Inc., filed this action, pursuant to the False Claims Act, alleging that Defendants knowingly have engaged in the practice of filing false statements with the United States Customs Service concerning the country of origin of their apparel imports. (Doc. No. 1). On June 02, 1997, Defendants filed motions to dismiss under FRCP 12(b)(6) for failure to state a claim. (Doc. Nos. 23, 25, 26, and 27). On November 13, 1997, Judge Holschuh, of the U.S. District Court for the Southern District of Ohio [1], granted that motion and dismissed this suit, with prejudice. (Doc. Nos. 126 and 127). On November 28, 1997, Relator filed a motion to disqualify Judge Holschuh and to vacate the order of dismissal. (Doc. No. 129). While determining that the motion to disqualify was not well-taken, Judge Holschuh chose to step aside, because of his usual practice with motions to recuse and the importance of expediting the proceedings. (Doc. No. 138 at 10–11, 14). He denied the motion to vacate. (Doc. No. 138). The Honorable Walter Rice, Chief Judge of this District, reassigned the case to this Court. (Doc. No. 142).

Relator has filed a motion to vacate Judge Holschuh's order dismissing the case, a motion to alter the judgment under FRCP 59(e), and a motion to amend the amended complaint. (Doc. Nos. 144, 130, 145). For the reasons provided below, none of Relator's motions are well-taken and the Court hereby denies Relator's motion to vacate, motion to alter the judgment, and motion to amend the amended complaint.

1. Relator initially filed this case in the United States District Court for the Central District of California. Defendants filed a motion to transfer venue, and the court entered an order transferring the case to the Southern District of Ohio, Columbus Division. (Doc. Nos. 18 and 84).

## I. FACTS[2]

Relator is a trade association of domestic textile and apparel manufacturers. Defendants consist of corporations and individuals who engage in the business of importing apparel. In sum, Relator's 73–page amended complaint alleges that Defendants contracted with overseas manufacturers to ship apparel to Defendants in the United States.. (Doc. No. 8). Allegedly, Defendants knowingly permitted the manufacturers to misidentify the country of origin on the packages shipped to Defendants. For instance, the label on a box of goods manufactured in the People's Republic of China would identify Hong Kong as the country of origin. This mislabeling would allow Defendants to import goods in excess of quotas imposed by the United States government. In this case, the country of origin identified did not affect the duties owed and paid by Defendants. (Doc. No. 126 at 33). Relator alleges that Defendants then falsified entry documents so that United States Customs officials would not discover that the shipment had been mislabeled.

To generalize, Relator contends that by allowing the mismarking of the packages, Defendants violated statutes and regulations under which the United States could assess fines and penalties. (*See* Doc. No. 126 at 6–10). Relator argues that these fines and penalties constitute obligations which Defendants owed the government. Thus, when Defendants falsified the entry documents, they attempted to avoid an obligation owed

to the U.S. government. Consequently, Defendants are subject to liability under a section of the False Claims Act ("FCA"), 31 U.S.C. § 3729(a)(7).[3] With the authority provided in the *qui tam* provisions of the FCA, Relator is pursuing the government's FCA claim and, if successful, would share in the government's recovery. *See* 31 U.S.C. § 3730(b).

## II. ANALYSIS

### A. Motion to Vacate Judgment

Relator has filed a motion to vacate under FRCP 60(b)(1) and 60(b)(6). (Doc. No. 129). It asserts that vacatur is the only way to "eliminate the 'taint' created by the appearance of impropriety" and to ensure true *de novo* review of the merits of this case. (Doc. No. 144 at 4). According to Relator, Judge Holschuh should have vacated the order under Rule 60(b)(6) when he agreed to step aside, and vacatur also is available now under Rule 60(b)(1) because Judge Holschuh erred when he failed to vacate the Order upon Relator's initial request. (*Id.*)

■ Relator argues that the Court should vacate the judgment because the circumstances culminating in disqualification created an appearance of impropriety. (Doc. No. 144 at 4–5). The Supreme Court has considered the appropriateness of vacating a judgment under FRCP 60(b)(6) on the grounds that, subsequent to the final judgment, a violation of 28 U.S.C. § 455(a)[4] is discovered.[5] *Liljeberg v. Health Servs. Acquisition*

---

**2.** In his order dismissing this case, Judge Holschuh provided a more detailed explanation of the facts and claims. (Doc. No. 126 at 1–10). The Court elects not to re-state the facts in detail here but will provide the following summary.

**3.** 31 U.S.C. § 3729(a)(7) provides as follows:

(a) Liability for certain acts.—Any person who—
(7) knowingly makes, uses or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government,
"is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus three times the amount of damages which the Government sustains because of the act of that person …"

**4.** 28 U.S.C. § 455(a) provides as follows:

"Any justice, judge, or magistrate of the United State shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."

**5.** Judge Holschuh did not find a violation of § 455(a). (Doc. No. 138 at 13). By applying the *Liljeberg* factors, the Court is not suggesting that a § 455(a) violation did occur.

The Court acknowledges Defendants' argument that voluntary recusal, after a finding that a § 455 violation did not occur, does not warrant vacatur. (See Doc. No. 148 at 8); See *Pashaian v. Eccelston Properties, Ltd.*, 88 F.3d 77, 84 (2d Cir.1996). However, the Court finds that the *Liljeberg* factors are helpful in disposing of Relator's motion.

*Corp.,* 486 U.S. 847, 858, 108 S.Ct. 2194, 2202, 100 L.Ed.2d 855 (1988). The Supreme Court instructed courts, faced with this issue, to consider: (1) the risk of injustice to the parties in the particular case, (2) the risk that the denial of relief would produce injustice in other cases, and (3) the risk of undermining the public's confidence in the judicial process. *Id.* at 864, 108 S.Ct. at 2205. The Court cautioned that while FRCP 60(b)(6) provides courts with the authority to vacate judgments whenever appropriate to accomplish justice, a court should apply the rule only in " 'extraordinary circumstances.' " *Id.* at 863–64, 108 S.Ct. at 2204–05 (citations omitted). Applied to this case, the factors do not weigh in favor of vacatur.

1. *Whether the parties will suffer injustice.*

██ A denial of the motion to vacate will not cause the parties to suffer injustice. Judge Holschuh did not find that a violation of § 455 occurred. He stepped aside citing both his normal practice with motions to disqualify and the importance of an expeditious resolution of the case on its merits without the encumbrance of a question of impropriety. As a policy matter, the Court is reluctant to vacate a judgment by a district judge who has not been disqualified but has voluntarily stepped aside.

The basis of Relator's motion for disqualification was that Judge Holschuh retained James Arnold of the Vorys, Sater, Seymour and Pease law firm ("Vorys, Sater") for representation in a legal matter occurring in May and June of 1997. (Doc. No. 138 at 1–2). Counsel, other than Mr. Arnold, from Vorys, Sater represent Defendants in the present case. Mr. Arnold and Judge Holschuh terminated their attorney/client relationship *before* this case was transferred to the Southern District of Ohio and *before* it was assigned, by blind draw, to Judge Holschuh. (Doc. No. 138 at 2 and 5).

Subsequent to the termination of the proceedings for which Judge Holschuh retained Mr. Arnold, Judge Holschuh telephoned the Honorable James H. Jarvis, United States District Judge for the Eastern District of Tennessee and a member of the Judicial Conference Codes of Conduct Committee. (Doc. No. 138 at 3). Judge Holschuh knew that Committee members could be contacted concerning matters involving application of the Code of Conduct for United States Judges. (*Id.* at 3–4). Judge Javis expressed his personal opinion, not an opinion on behalf of the Committee, that Judge Holschuh should not decide any matters involving the law firm of Vorys, Sater so long as Mr. Arnold represented Judge Holschuh but that he would be under no obligation to recuse himself from cases in which Vorys, Sater appeared as counsel after the representation ended, *i.e.,* when he tendered payment for legal services. (*Id.* at 4).

In a sworn declaration, Relator's counsel stated that Relator is not aware of any facts to support an allegation of actual bias or any act of impropriety by the judge. (Doc. No. 129; Cullen Declaration). Relator has failed to identify any illogical, unreasonable, or irrational statements or conclusions that indicate bias on behalf of Judge Holschuh.

Magistrate Kemp was assigned, by blind draw, to this case. On his own initiative, Magistrate Kemp independently prepared a proposed Opinion and Order ruling on the motion to dismiss and recommending dismissal of the case. (Doc. No. 138 at 5). Judge Holschuh then examined this draft, the briefs of the parties, and the authorities cited, and conducted his own research. (*Id.*). He reached the same conclusion as Magistrate Kemp and revised and supplemented Magistrate Kemp's opinion. (Doc. 138 at 5). This Court, in addressing Relator's FRCP 59(e) motion, has reviewed Judge Holschuh's order for clear error or manifest injustice.[6]

Considering the facts and circumstances surrounding the basis of the motion to dis-

---

**6.** If the motion to dismiss is granted, the Sixth Circuit will review those issues of law *de novo*. *See In re School Asbestos Litigation,* 977 F.2d 764, 786 (3d Cir.1992) (stating that failure to disqualify and vacate a ruling may be harmless error when an appellate court will later review a ruling on a plenary basis); *In re Continental Airlines Corp.,* 901 F.2d 1259, (5th Cir.1990) (stating that the risk of injustice to the parties in allowing to stand a summary judgment ruling is usually slight because those rulings are subject to *de novo* review).

qualify, coupled with the quality of review that the parties have received, the Court finds that the parties will not suffer injustice if the Court does not vacate the judgment. If there is a concern for prejudice to the parties, that concern should be for prejudice to Defendants if the Court vacates the judgment, grants Relator's motion to amend the complaint, and forces the parties to invest more time and resources into re-arguing the issues.

### 2. *Whether denial of this motion will produce injustice in other cases.*

The Court is not convinced that denial will create injustice in other cases. In agreeing to step aside, Judge Holschuh stated that he did not believe that, under the circumstances, a doubt as to his impartiality would arise. (Doc. No. 138 at 10). As stated above, Judge Holschuh removed himself for reasons unrelated to questions of impartiality. (*Id.*). This case will not offer precedent for future cases in which impropriety is established.

The Court's concern here is that *granting* this motion may convey the wrong message and produce injustice in other cases. From July through November this case progressed in Judge Holschuh's court and Relator failed to raise any question regarding impartiality. The parties and the court devoted considerable time and expense to this case. On November 13, the day the court issued the order dismissing the case, a legal assistant employed by Relator's counsel conducted a search for news articles concerning Judge Holschuh. (Doc. No. 129; Risinger Declaration). She learned of the traffic incident and alerted Mr. Cullen, one of Relator's attorneys, who directed her to call the court which presided over Judge Holschuh's case. (*Id.*). She learned that Mr. Arnold, a member of Vorys, Sater, had represented Judge Hol-

schuh, and she communicated that information to Mr. Cullen. (*Id.*).[7] Relator's counsel requested and applied for copies of Judge Holschuh's financial disclosure reports on November 19, 1997. (Doc. No. 138 at 6). Approximately two weeks *after* the disfavorable ruling, which disposed of the case, Relator moved to disqualify the Judge. In doing so, it has moved to vacate the ruling, alter or amend the judgment, and amend its complaint. In other words, Relator requests a complete second bite of the apple. The strategy employed by Relator is questionable at best, and the Court refuses to reward Relator or encourage this trend. Litigants have a duty to investigate and inform the court of any perceived biases before the court and the parties invest time and expense in a case. Relator has posited no reason for the failure to make a timely inquiry into Judge Holschuh's background.

### 3. *Whether a denial of the motion to vacate will undermine the public's confidence in the judicial system.*

Denying the FRCP 60(b) motion will not undermine the public's confidence in the judicial process. Judge Holschuh found no grounds for disqualification. Relator's counsel stated under oath that Relator was not aware of any facts supporting an allegation of bias or impropriety. (Doc. No. 129, Cullen Declaration). A member of the Judicial Conference Codes of Conduct Committee has expressed his opinion, as stated above, that Judge Holschuh would not be under an obligation to recuse. In addition, Magistrate Kemp and this Court have conducted independent analyses of the merits of the motion to dismiss. Therefore, this Court finds that denying the motion to vacate would not weaken the public's confidence in the judicial system.[8]

---

**7.** Mr. Cullen describes a slightly different version than Ms. Risinger. In a sworn declaration, Mr. Cullen states that at approximately 2:45 p.m. on November 13, 1997, he received a telephone call from Magistrate Kemp's office, informing Mr. Cullen of the ruling on the motion to dismiss. (Doc. No. 129). Mr. Cullen read a faxed copy and "was struck by a number of things which, in [his] subjective opinion, caused [him] to have concern with respect to the Court's objectivity and impartiality." (*Id.*). In his declaration, Mr. Cullen did not identify those "number of things"

that caused him concern. (*Id.*). Mr. Cullen concluded that he needed to inquire into the relationship between Judge Holschuh and opposing counsel. (*Id.*). On November 14, Mr. Cullen instructed Ms. Risinger to call the Mayor's Court and determine the identity of the firm that represented Judge Holschuh in the traffic incident. (*Id.*).

**8.** Yet, Relator argues that vacatur is necessary to preserve public confidence in the integrity of the legal system. (Doc. No. 144 at 12). The Court

## B. Motion to Amend or Alter Judgment

 Relator has moved, pursuant to FRCP 59(e) to amend or alter the judgment. The court may amend or alter a judgment for one of three reasons: (1) intervening change in controlling law has occurred, (2) evidence not previously available has become available, or (3) it is necessary to correct clear error of law or prevent manifest injustice. *Helton v. ACS Group*, 964 F.Supp. 1175, 1182 (E.D.Tenn.1997); *Keweenaw Bay Indian Community v. United States*, 940 F.Supp. 1139, 1141 (W.D.Mich.1996), *rev'd. on other grounds*, 136 F.3d 469 (1998); *North River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir.1995). A motion to alter or reconsider a judgment is an extraordinary remedy and should be granted sparingly because of the interests in finality and conservation of scarce judicial resources.[9] *Sussman v. Salem, Saxon & Nielsen, P.A.*, 153 F.R.D. 689, 694 (D.C.Fla. 1994) *Pennsylvania Ins. Guar. Ass'n. v. Trabosh*, 812 F.Supp. 522, 524 (D.C.Pa.1992).

In its motion, Relator fails to specify which of the three grounds for amending a judgment applies here. Because Relator does not discuss any intervening changes in the law or newly-discovered evidence, the Court assumes that Relator's position is that amendment is necessary to correct a clear error of law or to prevent manifest injustice.

 Relator objects to Judge Holschuh's interpretation of 31 U.S.C. § 3729(a). (Doc. No. 130 at 2). Specifically, Relator challenges the interpretation of the term "obligation." (*Id.* at 2–3). Because Congress failed to define this term, Judge Holschuh, in his order, analyzed the legislative history and case law which led to the statute and the few judicial decisions which have directly or indirectly addressed the issue. (Doc. No. 126 at 16–17). Judge Holschuh concluded that Relator's reading was novel and that Congress did not intend that the statute "apply to each and every statement which might conceal from the government the existence of criminal or civil violations to which monetary penalties might attach." (Doc. No. 126 at 24–25).

Judge Holschuh then considered the implications of a reading as broad as that suggested by Relator. (Doc. No. 126 at 26–30). *See United States v. Wells*, 519 U.S. 482, 117 S.Ct. 921, 931, 137 L.Ed.2d 107 (1997) (referring to two cases in which the Supreme Court considered the possible implications of proposed statutory interpretations). Judge Holschuh stated that the statute, under Relator's interpretation, would authorize the Department of Justice or any private citizen to enforce federal statutes or government regulations when a false statement has been made regarding conduct subject to monetary sanctions. (Doc. No. 126 at 26). As a result, private citizens could enforce laws and regulations including OSHA, environmental laws, 42 U.S.C. § 1983, and laws regulating the sale and purchase of firearms, the purchase and sale of narcotic drugs by pharmacists and pharmacy supply houses, and the inspection of food items under the Food, Drug and Cosmetic Act. (Doc. No. 126 at 26–30). Judge Holschuh concluded that the statutory language and the legislative history could not be reconciled with the recognition (1) that businesses engaged in commerce within the United States maintain millions of records, (2) that a failure to maintain accurate records subjects the business to sanctions pursuant

---

perceives Relator's concern for public confidence as less than genuine. Relator does not express concern about whether the public's confidence in the integrity of the system will suffer from the knowledge that counsel, after months of litigation, has moved to disqualify the judge immediately after a disfavorable ruling on a dispositive motion.

9. FRCP 59(e) is not a means by which a party may re-litigate issues previously considered. *Keweenaw Bay Indian Community v. Michigan*, 152 F.R.D. 562 (W.D.Mich.1992), *aff'd.*, 11 F.3d 1341; *EEOC v. Argent Indus., Inc.*, 746 F.Supp. 705, 706 (S.D.Ohio 1989). If the movant simply regurgitates arguments previously presented or presents arguments which originally could have been argued, then the movant's proper recourse is an appeal to the circuit court. *Dana Corp. v. United States*, 764 F.Supp. 482, 489 (N.D.Ohio 1991); *see Keweenaw Bay Indian Community*, 152 F.R.D. at 563. The Court acknowledges Defendants' assertion that Relator has simply regurgitated prior arguments. (Doc. No. 133 at 3). In its discretion, the Court will allow some latitude considering the fact that the judge hearing the original motion has stepped aside and requested that this Court review his judgment.

to statutes and regulations, and (3) that an infinite number of private lawsuits could be filed if private citizens could obtain a damage award for inaccurate records that fail to reflect an alleged violation of federal law. (Doc. No. 126 at 30).

The Eighth Circuit has issued an opinion, subsequent to Judge Holschuh's order, which may provide some guidance. In *United States v. Q International Courier, Inc.*, 131 F.3d 770 (8th Cir.1997), the defendants allegedly engaged in a practice in which they would ship bulk mail from the United States to Barbados for the purpose of mailing the letters individually back to the United States. *Id.* at 772. At the time, the U.S. Postal Service charge for domestic mail was 29 cents per ounce, while the Postal Service charged the Barbadian postal service as little as one-tenth of that amount for the same delivery of mail throughout the United States. *Id.* The United States, on behalf of the Postal Service, sued defendants on the grounds that they had violated the reverse claims provision of the FCA. *Id.* According to the government, the defendants owed an obligation to the United States for the full domestic postage, and the defendants attempted to reduce this obligation through fraudulent statements or records. *Id.* The district court granted summary judgment to the defendants holding that the government failed to establish that the defendants had an obligation to pay postage within the meaning of the FCA. *Id.*

The Eighth Circuit agreed, holding that whether the defendant's practice constituted a violation of some other law was a question for another day, but that, in this case, the United States had failed to demonstrate that any of the defendants owed an "obligation" to the government within the meaning of the FCA. *Id.* According to the Eighth Circuit, legislative history supports the interpretation that an "obligation" is a present duty to pay money or property that "must have been an obligation in the nature of those that give rise to actions of debt at common law for money or things owed." *Id.* at 773. The court reasoned that the deliberate use of the indicative, past tense in the words "money owed" suggested that Congress intended the

FCA to apply only to existing legal duties. *Id.* Citing, as support, the decision in *United States ex rel. S. Prawer & Co. v. Verrill & Dana*, 946 F.Supp. 87, 93–95 (D.Me.1996), the Eighth Circuit reasoned that if Congress had wished to include attempts to avoid potential fines or sanctions, it would have used language which reflected that. *Id.* at 773.

The court rejected the statutes cited by the government as establishing an obligation. *Id.* at 773–74. In particular, the court found that a statute that authorized the Postal Service to seek payment of a penalty not exceeding the total postage, created a potential penalty which, on its own, did not create a common-law debt. *Id.* at 774. "A debt, and thus an obligation under the meaning of the False Claims Act, must be for a fixed sum that is immediately due." *Id.* An obligation cannot be merely a potential liability. *Id.* at 773. The court noted that while the statutes and regulations cited by the government may support a judgment that the defendants engaged in illegal or fraudulent activity, those statutes and regulations did not create an obligation owed to the government. *Id.* The court rejected the proposition that the criminal penalties available for violating certain postal statutes were obligations, reasoning that the statutes were designed to punish one who violates the statute but were not designed to create an obligation to pay postage. *Id.* at 774. The government finally argued that the defendant owes postage because the mail was actually domestic rather than international mail. *Id.* The court held that even if the mail was considered domestic, the government failed to successfully identify any source imposing a duty on the defendants to pay postage. *Id.*

As stated above, the Eighth Circuit cited, as support, the *Prawer* decision. In his order, Judge Holschuh also relied on *Prawer*, which Relator has contended is, at best, based on "highly suspect" reasoning. (Doc. No. 59 at 18–19 and Doc. No. 130 at 16–17). The *Prawer* decision called into doubt the *United States ex rel. Sequoia Orange Co. v. Oxnard Lemon Co.*, 1992 WL 795477 (E.D.Cal.), *United States ex rel. Stevens v. McGinnis, Inc.*, 1994 WL 799421 (S.D.Ohio) and *Pickens v. Kanawha River Towing*, 916

F.Supp. 702 (S.D.Ohio) decisions, which form the basis of Relator's argument. *Prawer,* 946 F.Supp. at 95 n. 13. The *Prawer* court criticized these three decisions for not adequately discussing why statutory or regulatory violations give rise to an immediate obligation prior to any judgment. *Id.* Unable to define the scope of reverse false claims cases as interpreted by *Sequoia Orange, Stevens,* and *Pickens,* the *Prawer* court predicted that the scope would be as broad as "any lawyer's creative impulses." *Id.*

The *Prawer* court engaged in a discussion aimed at determining the scope of viable claims. *Id.* at 93–95. In discussing the interpretation of the word "obligation", the court pointed out that legislative history twice referred to "money owed" as the type of obligation involved. *Id.* at 95 (citation omitted). And, according to the court, "[m]oney is not 'owed' without a specific contract remedy, a judgment or an acknowledgment of indebtedness." *Id.* at 95. Both the *Q International* decision and the *Prawer* decision, cited, as support in the *Q International* opinion, support Judge Holschuh's order.

Relator argues in support of its FRCP 59(e) motion that liability for the payment of marking duties constitutes an obligation within the meaning of FCA, as alleged in Count V of its complaint. (Doc. No. 130 at 6). According to Relator, the marking statute and Customs regulations support the conclusion that marking duties accrue at the

time of importation. (Doc. No. 130 at 6–7). Thus, the obligation to pay those duties arises at importation. (Doc. No. 130 at 7).

The parties have addressed this argument in their briefs in support of and in opposition to the motion to dismiss. Judge Holschuh adequately addressed this issue and concluded that an obligation to pay marking duties pursuant to § 1304(h) accrues only if the importer fails to take corrective action and Customs then proceeds to levy the duties. (Doc. 126 at 33–36). While *Pentax Corp. v. Robison,* 125 F.3d 1457 (Fed.Cir.1997), *opin. amended on rehearing,* 135 F.3d 760, does not directly address the same issues as the case at hand [10], parts of that opinion are instructive. In explaining its ruling, the court stated that the obligation to pay ad valorem duty assessed under § 1304(f) does not arise unless a mismarking occurs followed by the failure to export, destroy, or remark the articles in accordance with § 1304. *Id.* at 1463. This language supports the order dismissing the present case.

Relator argues that Count IV, which involves customs bonds, alleges an attempt to avoid an obligation. (Doc. No. 130 at 9). According to Relator, the conditions attached to the bond create a contractual obligation. (*Id.* at 9–10). Judge Holschuh adequately addressed this issue along with the other claims. If Defendants presented falsified entry documents to Customs officials an obligation was not immediately due, *i.e.,* an obli-

---

**10.** In *Pentax,* 125 F.3d 1457, Customs accused Pentax of mismarking the country of origin in violation of 19 U.S.C. § 1304(a). In an attempt to mitigate penalties for violating § 1592(a), which prohibited mismarking resulting from fraud, gross negligence, or negligence, Pentax informed Customs of its violations. *Id.* at 1460. Section 1592(c)(4) serves to limit the penalties assessed, pursuant to §§ 1592(c)(1)–(3), against persons who disclose violations before or without knowledge of the commencement of a formal investigation of such violations. *Id.* at 1458–59. Because Pentax disclosed their violations, the monetary penalty to be assessed under § 1592 could not exceed a prescribed percentage of the " 'lawful duties of which the United States is or may be deprived.' " *Id.* at 1459 (citing 19 U.S.C. § 1592(c)(4)). Customs argued that this lawful duty included the 10% ad valorem duty under § 1304. *Id.* at 1460. The issue before the court was "whether the ad valorem duties assessed pursuant to section 1304(f) [were] duties of

which the government ha[d] been deprived 'as a result of a violation of' section 1592(a), 19 U.S.C. § 1592(d), thus making them duties that must be tendered by Pentax before it can qualify for prior disclosure treatment under 19 U.S.C. § 1592(c)(4)." *Id.* at 1460.

Ruling in favor of Customs, the Court of International Trade held that marking duties under 19 U.S.C. § 1304(f) constituted "lawful duties" subject to recovery under §§ 1592(c)(4) and (d). *Id.* at 1460. The Federal Circuit reversed the CIT and agreed with Pentax that "the government was not deprived of the § 1304(f) ad valorem duties 'as a result of the section 1592(a) violation,' as required by section 1592(d), because it is not the case that the section 1304(f) violation would not have occurred but for the section 1592(a) violation." *Id.* at 1463. In other words, the court determined that it could not say, as required by § 1592(d), that but for the § 1592(a) violation the § 1304(f) violation would not have occurred.

gation equivalent to a common law debt was not due.

Relator argues that Judge Holschuh's concern that damages would be difficult to calculate is not a proper basis for dismissing this action. (Doc. No. 130 at 12–14). Relator misinterprets Judge Holschuh's order. The order did not state or even suggest that because damages would be difficult to compute the action should be dismissed. Judge Holschuh considered the issue of damages in the context of interpreting the FCA, or more specifically, in the context of determining whether Congress intended to include such regulatory violations in the FCA. (Doc. No. 126 at 31). Judge Holschuh noted that it would be difficult for courts or juries to determine what fine, assessment, or penalty the government would have been entitled to had it pursued the regulatory or statutory violation. (*Id.*). This is because statutes and regulations often provide the government agency with a range within which to assess a penalty. (*Id.*). Thus, Judge Holschuh concluded that if Congress had intended for the FCA to cover such statutory and regulatory violations, Congress likely would have addressed the issue of how damages would be determined. (*Id.*). However, neither the FCA nor the legislative history addresses this issue. (*Id.*).

For the reasons provided above, the Court finds that amendment of the order dismissing Relator's action is not necessary to prevent clear error of law or manifest injustice.[11]

### C. Motion to Amend the Complaint

On January 8, 1998, Relator moved, pursuant to FRCP 15, to amend its complaint. Relator states that it seeks leave to amend for the purposes of clarifying the existing claims, providing this Court with a "clean slate," and eliminating any "taint" of an appearance of impropriety following the disqualification. (Doc. No. 145 at 1–2 and 4–5).

■ Rule 15(a) provides that leave to amend " 'shall be freely given when justice so requires.' " *Foman v. Davis,* 371 U.S. 178,

.182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). In general, the Sixth Circuit is "very liberal" in permitting amendments. *Northwestern Nat'l Ins. Co. of Milwaukee v. Joslyn,* 53 F.3d 331, 1995 WL 270995 *6 (6th Cir.1995). Certain factors, such as undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of amendment, may warrant the denial of a motion to amend. *Id.; Foman,* 371 U.S. at 182, 83 S.Ct. at 230. The grant or denial of a motion to amend is within the discretion of the district court. *Id.* "[P]iecemeal litigation should be discouraged, not only because it is antagonistic to the goals of public policy, but also because it is prejudicial to the rights of individual litigants." *Troxel Mfg. Co. v. Schwinn Bicycle Co.,* 489 F.2d 968, 970 (6th Cir.1973), *cert. denied,* 416 U.S. 939, 94 S.Ct. 1942, 40 L.Ed.2d 290 (1974).

■ Relator's argument for amendment is not well-taken. Relator will not be denied an opportunity to argue its case on the merits if this motion is denied. Relator admitted that the proposed amended complaint only clarified existing claims. As admitted by Relator, the parties have filed over 1,000 pages of briefs and documents; certainly Relator has enjoyed many opportunities to clarify the claims and exhaust any issues. (Doc. No. 145 at 2). In its memoranda filed in support of the motions to vacate and to alter the judgment, Relator regurgitates many, if not all, of its earlier arguments. This further illustrates the fact that amending the complaint and starting over would be futile as Relator likely would assert the same claims and the same arguments. *See Marx v. Centran Corp.,* 747 F.2d 1536, 1550 (citing *Foman,* 371 U.S. at 182, 83 S.Ct. at 230). The Court fails to see the need for amendment.

Furthermore, the Court finds compelling reasons to deny leave to amend. Relator has exhibited undue delay, and perhaps, bad faith, in bringing this motion. Defendants filed their motions to dismiss on June 2, 1997. (Doc. Nos. 23, 25, 26, and 27). Defendants'

---

**11.** In the order in which Judge Holschuh volunteered to remove himself from this case, he requested that this Court treat this as a *de novo* review without the restrictions imposed, by case law, on FRCP 59(e) motions. (Doc. No. 138 at 14). Relator is not entitled to a *de novo* review. However, the Court has reviewed the decision *de novo* and finds no error.

supporting memoranda and later replies and supplemental memoranda, should have alerted Relator to the alleged deficiencies in its complaint. Relator admits that its proposed second amended complaint focuses more precisely on problems raised by Defendants in earlier briefs. (Doc. No. 145 at 2). Judge Holschuh did not issue his order until November 13, 1997. (Doc. No. 126). Relator had several months to file a motion to amend their complaint, but rather waited until after the court granted Defendants' motion. *See Joslyn,* 1995 WL 270995 *6 (affirming district court's denial of motion to amend and noting that the movant had several months to seek leave to amend prior to the court's ruling); *Harris v. City of Auburn,* 27 F.3d 1284, 1287 (7th Cir.1994) (citation omitted) (stating that presumption that leave to amend is to be freely given disappears after judgment has been entered and, at that point, the movant must provide good reason to grant the motion). An open request for the Court to permit amendment to cure deficiencies, once the Court identifies those deficiencies, will not defeat a meritorious motion to dismiss pursuant to Rule 12(b)(6). Had Relator filed a motion to amend the complaint prior to the consideration of the motion to dismiss and accompanied that motion with a memorandum identifying the proposed amendments perhaps Judge Holschuh would have considered the motion to dismiss in light of the proposed amendments to the complaint and would not have dismissed this action had he been convinced that the proposed amendments would have cured the deficiencies in the complaint. Absent such a motion, however, Defendants were entitled to a review of the complaint as filed pursuant to Rule 12(b)(6). Relator is not entitled to an advisory opinion from the Court informing them of the deficiencies of the complaint and then an opportunity to cure those deficiencies.

Relator contends that granting amendment will benefit the Court by simplifying the case and promoting judicial economy. The parties have prepared and filed several hundred pages of briefs related to Defendants' motions to dismiss. Magistrate Kemp and Judge Holschuh devoted the time and resources necessary to carefully review the briefs, research and analyze the issues, and draft an order. After that order was issued, Relator filed a motion to vacate, a motion to alter the judgment, and a motion to amend the complaint. Again the parties have prepared and filed several hundred pages of briefs and supplements related to these motions. This Court, in ruling on these motions has revisited the issues addressed in the order of dismissal. Now, Relator proposes that, *in the interest of judicial economy,* we start over with a new pleading and a new set of briefs. (Doc. No. 145 at 4).

Granting leave to amend would be futile as Relator proposes no new claims and has exhausted the issues relevant to the motion to dismiss in briefs to the court. Granting leave to amend also is not proper here because of Relator's undue delay and arguable bad faith in filing this motion.

### III. CONCLUSION

For the reasons provided above, the motion to vacate is **DENIED**; the motion to alter the judgment is **DENIED**; and the motion for leave to amend is **DENIED**.

**IT IS SO ORDERED.**