**In the Matter of Ernest & Carol KRIKAVA, Kevin Krikava, Debtors.**

**Ernest Krikava and Kevin Krikava, Plaintiffs,**

**v.**

**Richard J. Butler, Trustee, and Mark A. Beck, Attorney for Trustee, Defendants.**

**Bankruptcy Nos. BK92–40351, BK92–40352. Adversary No. 98–4034.**

United States Bankruptcy Court, D. Nebraska.

June 17, 1999.

702

Stephen H. Nelsen, Lincoln, NE, for defendant Mark A. Beck.

Ira Dennis Hawver, Ozawkie, Kansas, for plaintiffs.

Shirley Keeler, Kansas City, MO, for defendant Richard J. Butler, Chapter 7 Standing Trustee.

### MEMORANDUM

JOHN C. MINAHAN, Jr., Bankruptcy Judge.

This matter is before the Court upon Defendant Mark A. Beck's Rule 12(b) Motion to Dismiss Complaint (Fil. # 17), Plaintiffs' Resistance to Motion to Dismiss (Fil. # 20), Defendant/Trustee's Motion to Dismiss (Fil. # 23) and Plaintiffs' Resistance to Trustee's Motion to Dismiss (Fil. # 29). The Motions to Dismiss are granted.

### FACTS

Ernest and Carol Krikava filed for Chapter 12 relief on March 4, 1992 (BK92–40351). On this same date, the debtors' son, Kevin Krikava, also filed under Chapter 12 (BK92–40352). The bankruptcy cases were consolidated on March 26, 1992 (Fil. # 20). On August 14, 1992, the consolidated cases were converted to Chapter 7 cases under 11 U.S.C. § 1208(d) because the debtors had committed fraud in connection with the bankruptcy cases (Fils. # 106, # 107). Richard J. Butler was appointed as the Chapter 7 Standing Trustee and Mr. Mark A. Beck served as attorney for the trustee (Fil. # 125).

On October 19, 1992, Mr. Beck, on behalf of the Chapter 7 trustee, filed a Motion for Injunction and Restraining Order to restrain the debtors from interfering with the administration of the bankruptcy estate (Fil. # 146). Debtors did not resist this Court's entry of an Injunction and Restraining Order and the trustee's motion was sustained (Fil. # 158). Debtors were represented by counsel at the hearing on trustee's Motion For Injunction and Restraining Order, and no appeal was taken from this ruling.

On November 16, 1992, Mr. Beck, on behalf of the trustee, filed a Motion For Contempt alleging that the debtors had interfered with the liquidation of estate assets (Fil. # 164). The motion was heard on November 18, 1992. The debtors were again represented by counsel at the hearing. The debtors were not held to be in contempt. However, I sustained the trustee's oral request for a Writ of Assistance, in part, due to debtors interference with the trustee's administration of the estate. The Writ of Assistance directed the U.S. Marshal to assist the Chapter 7 trustee in execution of his duties. No appeal was taken from the Writ of Assistance entered by this Court (Fil. # 174).

On December 11, 1992 (Fil. # 209), and December 22, 1992 (Fil. # 223), the trustee filed a Notice, and Revised Notice, to Creditors of a Public Sale of certain real estate which constituted property of the bankruptcy estate. The United States De-

partment of Agriculture, Farm Home Administration ("United States") had a security interest in the real estate which was to be sold. Notice of sale was sent to the United States on December 11, 1992 and December 22, 1992. The United States did not object to the sale, stated that it approved of the proposed public auction and further stated that it would have a representative present on the date of the auction to place a protective bid of $96,-310.00.

On March 6, 1996, Ernest Krikava filed a Motion requesting that the trustee be ordered to abandon potential claims against the Community National Bank of Seneca, Kansas ("Bank") (Fil. # 391). Krikava's counsel suggested to the Court that if the claims were abandoned, Ernest Krikava could then sue the Bank, personally. Krikava then filed a Withdrawal of Motion for Abandonment requesting, in part, that the trustee be ordered to sue the Bank (Fil. # 396). The trustee declined and filed a motion to abandon potential claims against the Bank. The trustee alleged that debtors' counsel was not willing to pursue claims against the Bank, debtor had not found outside counsel to file the claims, and that the claims were of inconsequential value and should be abandoned (Fil. # 397).

After a hearing, I entered an interim Order allowing for additional time for the presentation of evidence (Fil. # 403). As part of this Order, I stated that "the Chapter 7 trustee has proceeded appropriately with respect to the administration of the alleged lender liability action. Counsel for debtor acknowledged on record today, that debtor, in fact, desires to withdraw its motion to abandon and that debtor does not have the ability to prosecute the claim himself at this time." [1] (Fil. # 403).

Following a final hearing regarding abandonment, I sustained the trustee's and debtors' Motions to Abandon (Fils. # 397, # 391), concluded the debtor's Withdrawal of Motion for Abandonment (# 396) and trustee's Resistance to Withdrawal of Motion for Abandonment (Fil. # 401) were moot, and denied resistances filed by the Bank (Fils. # 392, # 400, and # 407). (See Fil. # 408). Debtors were represented by counsel at this hearing, and the decision was not appealed. The consolidated cases were closed on June 16, 1997 (Fil. # 434).

On February 3, 1997, Ernest and Kevin Krikava filed suit in the United States District Court for the District of Kansas against multiple defendants, including Richard J. Butler and Mark A. Beck. Mr. Butler filed a motion with this Court requesting that the bankruptcy cases be reopened (Fil. # 435), and the motion was sustained.

On February 12, 1998, I ordered the debtors to dismiss Mr. Butler and Mr. Beck as parties to the Kansas litigation, and I allowed the debtors 60 days in which to file a contested matter or adversary proceeding in this Court (Fil. # 460), against Mr. Butler and/or Mr. Beck. The Kansas litigation was dismissed. See U.S. ex rel. Krikava v. Community National Bank of Seneca, 220 B.R. 699 (D.Kan. 1998).

The debtors filed a timely Complaint with this Court, naming as defendants, Richard J. Butler in his capacity as trustee in the Krikavas' Chapter 7 bankruptcies, and Mark A. Beck in his capacity as attorney for the trustee (A98–4034, Fil. # 1).

---

1. At the hearing on these motions, the Court was informed that Ernest Krikava had prior discussions with Kansas counsel regarding suing the Bank. There was also concern that the statute of limitations on the claim against the Bank was about to run. When the Krikavas learned that Kansas counsel was not willing to represent them personally and promptly file the action against the Bank, the Krikavas reversed their position. They sought to withdraw the Motion to Abandon, to thereby leave the claim in the hands of the trustee, and argue that the trustee should pursue the claim. I concluded that it was reasonable and appropriate for the trustee to abandon the claim.

On June 8, 1998, plaintiffs filed two certificates attesting to service upon Mr. Gerald Goodell (Fil. # 5), and Mr. James Borthwick (Fil. # 6), attorneys for defendants, Mark Beck and Richard Butler, respectively.

On December 10, 1998, I overruled Plaintiffs' Motion for Default Judgment (Fil. # 13) and sustained the Resistance by defendants Beck (Fil. # 11), and Butler (Fil. # 12). As part of that Order, I allowed plaintiffs an additional 30 days in order to obtain personal service on the defendants (Fil. # 13). On January 8, 1999, plaintiffs filed certificates attesting that they had served defendants Butler (Fil. # 15) and Beck (Fil. # 16) on January 7, 1999.

This adversary proceeding is currently before the Court upon defendants' Motions to Dismiss (Fils. # 17, # 23). In support of their Motions to Dismiss, the defendants have requested that the Court take judicial notice of the record in the related bankruptcy cases. In addition, defendant Butler offers numerous documents, including deposition testimony in support of his motion to dismiss. In opposition to defendants' motions, plaintiffs have offered three affidavits.

### LAW

Defendants' Motions to Dismiss (Fils. # 17, # 23) are made pursuant to FED. R.CIV.P. 12(b). Both defendants request that the Court take judicial notice of court files in the related bankruptcy cases. In addition, defendant Butler offers numerous additional documents, including deposition testimony, in support of his motion to dismiss. In opposition to defendants' motions, plaintiffs offered three (3) affidavits from harvesters which allegedly have knowledge of facts pertaining to debtors' complaint, as well as a letter received by debtors' counsel from the United States. Since the Court will consider "matters outside the pleading[s]," Rule 12(b) requires that the motion be treated as one for summary judgment. (*See* FED.R.CIV.P. (12)(b)).

Summary judgment is to be granted if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R.BANKR.P. 7056(c). Under FED. R.BANKR.P. 7056(e), the non-moving party may not rest upon the mere allegations or denials in the pleading, but must set forth specific facts showing there is a genuine issue for trial.

Thus, the moving party's burden on summary judgment "may be discharged by a showing that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden then shifts to the nonmoving party to make "a showing sufficient to establish the existence of an element essential to [its] cause, and on which it will bear the burden of proof [at trial]." *Id.*

### DISCUSSION

Plaintiffs allege four separate causes of action.[2] Plaintiffs first and second causes of action allege that defendant Butler is liable for: (1) failure to prosecute or timely abandon claims which the Krikavas allegedly had against the Bank, and (2) violation of the False Claims Act (31 U.S.C. §§ 3729 et seq.).

Plaintiffs' third and fourth causes of action allege that defendant Beck is liable based upon allegedly false and misleading statements made in Motions filed with this Court. (*See* Fils. # 146, # 164).

### A. Service of Process:

As a threshold issue, defendant Beck asserts that plaintiffs' complaint should be dismissed as: (1) plaintiffs did not serve defendant Beck within 10 days following issuance of the *initial* summons pursuant to FED.R.BANKR.P. 7004(e), (2) plaintiffs

---

**2.** Plaintiff's fifth cause of action was withdrawn on March 23, 1999 (*See* Fil. # 29).

failed to personally serve defendant Beck with the original summons and complaint pursuant to FED.R.BANKR.P. 7005 and FED. R.CIV.P. 5(a), and, (3) plaintiffs failed to serve defendant Beck with process within 120 days of filing their complaint pursuant to FED.R.BANKR.P. 7004 and FED.R.CIV.P. 4(m).[3]

■ Federal Rule of Bankruptcy Procedure 7004(e) states, in pertinent part: "If a summons is not timely delivered or mailed, another summons shall be issued and served." It is irrelevant that the *initial* Summons and Complaint were not timely served. The plaintiffs were granted additional time to perfect service (Fil. # 13), obtained additional Summons' pursuant to Rule 7004(e), and duly perfected service upon the named defendants (Fils. # 15, # 16). Thus, defendants' first two assertions are without merit.

■ Further, under FED.R.BANKR.P. 4(m), if service is not obtained within 120 days after filing, the court may, upon a showing of good cause, extend the time for service for an appropriate period. On December 10, 1998, the Court allowed plaintiffs an additional 30 days in which to perfect service on the individually named defendants (Fil. # 13). Plaintiffs perfected service on January 7, 1999 (Fils. # 15, # 16). As this date is within the thirty (30) day service period granted by the Court, Beck's final assertion is also without merit.

### B. Collateral Estoppel:

In the prior proceedings before this Court, plaintiffs had a full and fair opportunity to litigate the issues which form the basis of the allegations contained in their first, third and fourth causes of action. Plaintiffs were represented by counsel at each of the hearings, and this Court's decisions were not appealed. The plaintiffs are collaterally estopped from asserting the first, third and fourth causes of action stated in their Complaint.

Plaintiffs' first cause of action alleges that the trustee negligently or willfully failed to prosecute, or timely abandon, potential claims against the Bank. On April 25, 1996, this Court held a final hearing on Ernest Krikava's Motion to Abandon claims against the Bank (Fil. # 391), Resistance by the Bank (Fil. # 392), debtor's Withdrawal of Motion to Abandon and request that the trustee be required to pursue potential claims against the Bank (Fil. # 396), trustee's Resistance to debtor's withdrawal of motion to abandon (Fil. # 401), trustee' Motion to Abandon potential claims against the Bank (Fil. # 397), and Resistances filed by the Bank (Fils. # 392, # 400, and # 407). In support of his Motion to Abandon, the trustee stated that debtor's counsel was not willing to file claims against the Bank, debtor had not found outside counsel to file the claims, and that the claims were inconsequential in value or burdensome to the estate (Fil. # 397). I granted debtor's and trustee's motions to Abandon, held that the debtor's withdrawal of his motion to abandon and trustee's Resistance were moot, and denied the Bank's resistances. Debtor was represented by counsel at the hearings and did not appeal this Court's decision.

■ Issues concerning the trustee's abandonment of property of the estate were fully litigated before this Court and the Krikavas are simply precluded from raising the issues again. In first instance, it was the Krikavas who filed a Motion to Abandon, there was no resistance to their motion and that motion would have been sustained had they not withdrawn it. The fact is that the Krikavas' were not able to file a claim against the Bank, so they attempted at the very last minute, only a few days before they thought the statute of limitations would run, to leave the claim in the bankruptcy estate and to assert that

---

**3.** Defendant Butler attempts to join in the insufficiency of process argument through oral request to amend his Motion to Dismiss.

the trustee should prosecute the claim. At the time the Krikavas withdrew their Motion to Abandon it was very apparent to the Court that they were attempting to place the trustee in a difficult position on the eve of the running of the statute of limitations. I therefore articulate my conclusion and holding that it was reasonable for the trustee to abandon the claim against the Bank.

Plaintiffs' third cause of action alleges Mr. Beck, in his capacity as trustee's counsel, filed a Motion for Injunction and Restraining Order (Fil. # 146), wherein he made false and unfounded statements for the purpose of misleading and prejudicing the Court against the debtors. The trustee's Motion for Injunction and Restraining Order was sustained by this Court on October 29, 1992 (Fil. # 158). Debtors were represented by counsel at the hearing on trustee's motion, but chose not to resist the request for Injunction and Restraining order. Debtors did not appeal this Court's order.

■ The Krikavas had the opportunity to litigate issues concerning the issuance of the Injunction and Restraining Order and they chose not to do so. They also had the opportunity to dispute any and all statements which attorney Beck had made to the Court. At the hearing on the injunction, there was a dispute as to whether and to what extent, if any, the Krikavas were hindering the trustee's harvesting of crops and liquidation of assets. I was convinced that' a potentially dangerous situation existed and that the Court needed to take immediate action to head off and to defuse the situation. I issued an injunction to prevent the Krikavas from interfering with the trustee's administration of the bankruptcy estate and, at a later date (*see* infra.) I issued a writ of assistance directing the United States Marshal to go to the Krikavas' farm to assist the trustee in carrying out his duties. The Krikavas did not resist issuance of the Injunction and Restraining Order. The Krikavas also did not appeal my ruling. Therefore, the Kri-

kavas are precluded from asserting the third cause of action stated in the Complaint.

■ Plaintiffs' fourth cause of action alleges that Mr. Beck, acting in his capacity as trustee's counsel, attempted to mislead the Court by filing a Motion for Contempt (Fil. # 164) wherein he made allegedly false and libelous statements against the debtors. On November 19, 1992, I sustained Mr. Beck's oral request for a Writ of Assistance, in part, due to debtors' interference with the trustee's administration of the estate. Debtors were represented by counsel at this hearing and did not appeal this Court's Order for a Writ of Assistance and are precluded from raising the issue again. The Krikavas were not held in contempt.

■ Let me note for the record, that I have not received into evidence the affidavits offered by the plaintiff. These affidavits provide statements of persons who harvested the plaintiffs' crops with alleged contemporaneous knowledge of facts related to the allegations made by Mr. Beck (*See* Fil. # 20, atts. 1–3). This evidence was not offered at either the hearing on the trustee's Motion for Injunction and Restraining Order or the trustee's Motion for Contempt. The plaintiffs had notice and opportunity to resist the trustee's Motion for Injunction and Restraining Order and did not do so. This evidence was available to the plaintiff at the time of the hearings and it does not constitute newly discovered evidence.

■ In reading debtors' Complaint in its entirety, it can be construed to allege that defendants Beck and Butler are liable for defamatory statements made in the course of judicial proceedings. However, even if the Court were to conclude that the defendants made defamatory statements, there is no liability for defamatory statements made in the course of judicial proceedings. *Scott Fetzer Co. v. Williamson*, 101 F.3d 549 (8th Cir.1996); *Sinnett v.*

*Albert,* 188 Neb. 176, 195 N.W.2d 506 (1972).

### C. Claim under 31 U.S.C. § 3729(a)(7):

Plaintiffs' second cause of action asserts that the trustee violated 31 U.S.C. § 3729(a)(7) of the False Claims Act (31 U.S.C. §§ 3729, et seq.) (the "Act") when he did not inform the United States that Kevin Krikava had arranged financing to make up past due payments on estate property financed by the United States. (*See* Fils. # 1, # 29).

■ The Act, as amended in 1986, allows the United States, or private citizens ("qui tam plaintiffs") acting on behalf of the United States, to recover damages from individuals who knowingly make false claims for money or property upon the United States or who submit false information in support of such claims. *United States ex rel. Barth v. Ridgedale Elec., Inc.,* 44 F.3d 699 (8th Cir.1995).

■ Section 3729(a)(7) of the Act has been referred to as the "reverse false claims provision." *Rabushka ex rel. United States v. Crane Co.,* 122 F.3d 559, 565 (8th Cir.1997). A claim under § 3729(a)(7) requires proof:

> (1) that the defendant made, used, or caused to be used a record or statement to conceal, avoid, or decrease an obligation to the United States; (2) that the statement or record was false; (3) that the defendant knew that the statement was false; and (4) that the United States suffered damages as a result.

*Pickens v. Kanawha River Towing,* 916 F.Supp. 702, 708 (S.D.Ohio 1996).

Plaintiffs assert that the trustee's liability under § 3729(a)(7) results from the fact that he "made a false record when he did not inform the [United States] that the Krikavas had arranged financing to make up past due payments and arranged to sell the property for a loss of over $51,000.00 after deduction of expenses and trustees and lawyer's fees ..." (*See* Fil. # 29, p. 2).

■ A party is liable under § 3729(a)(7) only where they "make, use, or cause to be made or used, a false record or statement." *Id.* Thus, "[a] failure to report does not count as a statement or record," *Pickens,* 916 F.Supp. at 708, and will not result in liability under § 3729(a)(7).

■ Even if taken as true, plaintiffs allege nothing more than trustee's failure to inform the United States of alternative financing allegedly obtained by Kevin Krikava, and this does not state a claim under 31 U.S.C. § 3729(a)(7).

Further, as *qui tam* plaintiffs, the Krikavas' claim is brought "on behalf of the government as agents of the government, which is always the real party in interest." *United States ex rel. Rodgers v. State of Arkansas,* 154 F.3d 865 (8th Cir.1998). Thus, a *qui tam* plaintiff's standing to bring suit is derived from the government, and the actions and inactions of the United States may preclude the plaintiffs from being able to bring suit.

Plaintiffs assert that the trustee violated § 3729(a)(7) of the Act because he failed to inform the United States of financing allegedly obtained by Kevin Krikava. However, the record clearly reflects that the United States had knowledge of the alleged financing prior to the trustee's sale. The United States did not object to the proposed sale. The United States chose to proceed with the public sale and took advantage of the protections afforded by § 363 by opting to place a minimum bid on the property (Fil. # 23, Att. 16).

In other words, the United States made an informed election of how it wanted to proceed with respect to the collateral by electing to rely upon the public sale under supervision of the Chapter 7 trustee. Accordingly, the United States is barred from asserting a claim against the Chapter 7 trustee in connection with the alleged failure of the Chapter 7 trustee to inform

the United States that Kevin Krikava had obtained a loan commitment.

Further, counsel for the Krikavas has advanced no legal authority for the proposition that the Chapter 7 trustee had an obligation to inform the United States that Kevin Krikava had obtained a loan commitment. The Chapter 7 trustee acts as a fiduciary for the benefit of all creditors, and in that connection, is charged with the responsibility of liquidating estate assets. Whether or not the Krikavas could obtain a loan is simply not relevant to the administration of the bankruptcy estate. I conclude that the trustee acted appropriately for at least two (2) reasons. First, the trustee had no duty to inform the United States that the Krikavas had a loan commitment. Furthermore, whether or not the trustee had such a duty is irrelevant because prior to the public sale of the real estate, the United States was aware that Mr. Krikava claimed that a loan commitment had been obtained.

Based upon the foregoing, I conclude that the United States, and in turn the Krikavas, are barred from asserting that the United States suffered harm due to the alleged failure of the trustee to inform the United States of the alleged financing obtained by Kevin Krikava.

IT IS THEREFORE ORDERED, that defendants are entitled to summary judgment, therefore, the Motions to Dismiss (Fils. # 17, # 23) are granted. A separate order will be entered dismissing this adversary proceeding and the reopened bankruptcy case will be closed in due course.

IT IS SO ORDERED.