**Barbara K. BURCH, et al., ex rel.
UNITED STATES of America,
Plaintiffs,[1]**

v.

**PIQUA ENGINEERING,
INC., Defendant.**

No. C–1–90–745.

United States District Court,
S.D. Ohio, W.D.

Oct. 9, 1992.

---

1. As in this Court's last Order, the Court has used the terms Relators and Plaintiffs interchangeably when referring to Barbara Burch, Joan Harmon, and Lowell Kissinger—the persons who are pursuing this action. The Court fully understands the difference between the role of the United States government and the role of these three employees in this case.

Ann Louise Lugbill, James Burdette Helmer, Jr., Helmer, Lugbill & Whitman Co., Cincinnati, OH, for Barbara K. Burch, Joan R. Harmon, and Lowell A. Kissinger.

Gerald Francis Kaminski, U.S. Dept. of Justice, Cincinnati, OH, for U.S.

John William Beatty, Dinsmore & Shohl, Cincinnati, OH, for Piqua Engineering.

Michael Davidson, Senate Legal Counsel, Washington, DC, for United States Senate, amicus.

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS, DENYING PLAINTIFFS' MOTION TO DISMISS, AND ORDERING SEPARATE TRIALS

SPIEGEL, District Judge.

This matter is before the Court on the following pleadings: Defendant Piqua Engineering, Inc.'s ("Piqua") Motion to Dismiss Count I of the First Amended Complaint (doc. 31), the Plaintiffs' Response (doc. 33), the Plaintiffs' Motion to Dismiss the Defendant's counterclaims (doc. 34), the Defendant's Reply (doc. 35), the Defendant's Response (doc. 36), the Relator's Reply (doc. 37), the Defendant's Objections (doc. 38), and the Defendant's Response (doc. 39).

The Plaintiffs in this case allege that Piqua did not use the contractually prescribed testing procedures and quality standards on missile detonators and detonator parts supplied to the government. Furthermore, the Plaintiffs allege that Piqua falsely certified that it had met the requisite testing and quality standards. The Plaintiffs also claim that Piqua retaliated against the employees who brought this lawsuit.

## PIQUA'S MOTION TO DISMISS COUNT I

Defendant Piqua has moved to dismiss Count I of the Plaintiff's Complaint based upon the alleged unconstitutionality of the False Claims Act ("FCA" or "qui tam"). Defendant Piqua has also moved to dismiss under Fed.R.Civ.P. 9(b) for the Plaintiffs' alleged failure to plead fraud with particularity. We shall examine these grounds in turn.

### The Constitutionality of the FCA

■ In a June 18, 1992 Order, this Court denied Piqua's Motion to Dismiss. In that Order, the Court summarized its decision as follows: "[w]e can find no aspect of the FCA that violates the Constitution. As a result of this conclusion, this Court must defer to the will of the elected branches of government as expressed in the FCA." *Burch v. Piqua Engineering, Inc.*, 803 F.Supp. 115, 121 (S.D.Ohio 1992) (J. Spiegel).

Defendant Piqua argues that the United States Supreme Court's recent decision in *Lujan v. Defenders of Wildlife*, —— U.S. ——, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992), dictates that this Court reverse its earlier Order upholding the constitutionality of the FCA. Specifically, Piqua contends that the Relators lack standing to sue for substantive violations of the FCA, because they have not suffered the requisite personal injury in fact under Article III of the Constitution.

In *Lujan*, the Supreme Court considered the issue of whether environmental groups had standing to challenge a regulation which required government agencies to confer with the Secretary of the Interior regarding the effect upon endangered species by certain federally funded projects, but not others. The Supreme Court stated that in order for a plaintiff to have standing, there must be "... an invasion of a legally protected interest which is (a) con-crete and particularized ... and (b) 'actual or imminent, not "conjectural" or "hypo-thetical." ' " *Id.*, —— U.S. at ——, 112 S.Ct. at 2136 (citations omitted). The Supreme Court concluded that the Plaintiff environmental groups in *Lujan* did not have standing because they could not demonstrate "... that one or more of [their] members would thereby be 'directly' affected apart from their 'special interest' in the subject." *Id.*, —— U.S. at ——, 112 S.Ct. at 2138 (citations omitted).

After careful study of the Supreme Court's decision in *Lujan*, we are further convinced that *qui tam* plaintiffs possess standing under Article III of the U.S. Constitution. The harm to *qui tam* plaintiffs is both concrete and imminent. The plaintiffs in an FCA suit have standing, because of the potential ramifications to their employment relationship by bringing a *qui tam* action. The Plaintiffs in an FCA action do not have a "special interest," such as the hope of one day returning to a country to observe endangered species, as in *Lujan*. Instead, the *qui tam* plaintiffs are directly affected by the potential ramifications of bringing suit against their employer. As noted in this Court's June 18, 1992 Order, the Plaintiffs aver that Piqua fired two of the Plaintiffs and laid off the third as a result of initiating this suit. The Plaintiffs in the lawsuit have been directly effected by the Defendant's actions, according to the Plaintiffs' allegations. Therefore, we affirm our earlier decision that the FCA does not run afoul of Article III standing requirements.

### Pleading Fraud with Particularity

■ Defendant·Piqua next claims that the Count I of the Complaint should be dismissed for failure to plead fraud with particularity. The Federal Rules of Civil Procedure mandate that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b).[2]

---

2. We note that courts have applied the Fed. R.Civ.P. 9(b) standards to *qui tam* complaints, because such claims are essentially a type of fraud. *See e.g., United States ex rel. Joseph v. Cannon*, 642 F.2d 1373, 1386 (D.C.Cir.1981), *cert. denied*, 455 U.S. 999, 102 S.Ct. 1630, 71 L.Ed.2d 865 (1981); *United States ex rel Truong v. Northrop Corp.*, Case No. CV-1-88-967 (C.D.Cal. Nov. 1, 1990).

The purpose of this rule is to protect defendants from a plaintiff conducting a discovery fishing trip in a fraud case. *See In re United States Shoe Corp. Lit.*, 718 F.Supp. 643, 646 (S.D.Ohio 1989).

■ In applying this rule, the United States Court of Appeals for the Sixth Circuit has required that the alleged fraudulent circumstances must include: (1) the time; (2) the place; (3) the specific content of the fraud; and, (4) the identities of the parties participating in the fraud. *Michaels Bldg. Co. v. Ameritrust Co.*, 848 F.2d 674, 679 (6th Cir.1988). Thus, a pleading must place defendant on notice of the precise misconduct or fraudulent acts of which the plaintiff complains. *Cincinnati Gas & Elec. Co. v. Gen. Elec. Co.*, 656 F.Supp. 49, 76 (S.D. Ohio 1986) (J. Spiegel).

■ We realize that because of national security considerations, the Plaintiffs may have particular difficulty in pleading their fraud allegations with particularity. However, this Court has an obligation to apply the Federal Rules of Civil Procedure. Under the standards of Rule 9, we have concerns with certain aspects of the Plaintiffs' Complaint. Specifically, in Paragraph 14, the Plaintiffs allege that the Defendant deviated "... from Government quality standards *including, but not limited to,* the following:," after which they list a series of deficiencies. Amended Complaint, doc. 29, at ¶ 14 (emphasis added). Similarly, in Paragraph 15, the Complaint states that "[t]he Relators discovered false test and inspection certifications *including, but not limited to* the following:," after which they list a number of fraudulent inspection practices used by Piqua. *Id.* at ¶ 15 (emphasis added). In using the language of "including, but not limited to," the Plaintiffs have failed to place Piqua on notice of the company's *precise* misconduct or fraudulent acts at issue in this lawsuit. *See Cincinnati Gas & Elec. Co.*, 656 F.Supp. at 76. As a result, the Plaintiffs have not pleaded fraud with particularity.

Furthermore, the Plaintiffs allege that Piqua violated the *qui tam* Act with regard to "... one or more of Piqua's contracts with the United States Government." Amended Complaint, doc. 29, at ¶ 10. The Defendant contends that this language does not satisfy the "particularity" requirement of Rule 9. This Court recognizes the difficulty of the Plaintiffs' position. The Plaintiffs in this litigation were assembly line employees of Piqua.[3] Piqua receives contracts from federal agencies with a government contract number. Piqua then parcels out the various tasks to be performed on these contracts to its employees, and in so doing, assigns the work internal contract numbers. The assembly line work is done under these internal contract numbers. Consequently, the Plaintiffs, as assembly line workers, did not have access to the information and documents necessary to determine the government contract numbers or the dates on which each false certification and claim for payment were made. *See Michaels Bldg. Co.*, 848 F.2d at 681 (courts should not demand too much specificity from pleaders where the defendant is jealously guarding the information that the plaintiff is seeking).

Still, the Plaintiffs have not given Piqua much notice concerning which of its contracts with the government are at issue in this lawsuit. The Plaintiffs, as assembly line workers, may have had access to internal contract numbers. If so, the Plaintiffs should include this information in their Complaint. Furthermore, the Plaintiffs should inform the Defendant of the precise misconduct or fraudulent acts the Defendant committed while working on these government contracts.

Consequently, the Defendant's Motion to Dismiss Count I is granted, but the Plaintiffs have leave until November 2, 1992 to remedy the deficiencies in their Complaint by filing an amended complaint.

## THE DEFENDANT'S COUNTERCLAIM

■ In its Answer, Piqua asserted several counterclaims against the Plaintiffs. The Defendant's counterclaims include breach of contract, breach of duty of loyalty, breach of fiduciary duty, breach of duty

**3.** We note that one of the Plaintiffs still works at Piqua.

of fair representation, and defamation. The Plaintiffs have moved to dismiss the Defendant's counterclaims, arguing that all counterclaims in FCA cases are barred as a matter of law.

The availability of counterclaims in a False Claims Act case appears to be an issue of first impression within the Sixth Circuit. Nevertheless, other jurisdictions have dismissed a defendant's counterclaims in FCA actions. *See e.g., Mortgages, Inc. v. U.S. Dist. Court for the Dist. of Nevada,* 934 F.2d 209, 212 (9th Cir.1991) ("there is no right in indemnity or contribution among participants in a scheme to defraud the government in violation of the FCA"); *United States ex rel. Madden v. Gen. Dynamics Co.,* Case No. CV–88–5352 WMB (C.D.Cal. Feb. 13, 1992) (defendant is prohibited from asserting all counterclaims); *United States ex rel. Newsham v. Lockheed Missile and Space Co.,* 779 F.Supp. 1252 (N.D.Cal.1991) (same); *United States v. Kennedy,* 431 F.Supp 877 (C.D.Cal.1977) (defendants not entitled to indemnification); *United States ex rel. Rodriquez v. Weekly Publications, Inc.,* 74 F.Supp. 763 (S.D.N.Y.1947).

These courts have dismissed the defendant's counterclaims, because they have found that counterclaims conflict with the Congressional intent behind the FCA. The *Rodriquez* court observed that:

> [t]o permit the counterclaim pleaded would set a precedent that would be a strong deterrent to the institution of genuine informer's actions. We may assume that some informers would get their information of the fraud on the government by being implicated in the perpetration of the fraud. Fear of a counterclaim based on the charge that the informer himself was solely involved and that the defendants relied upon his judgment and integrity, would in the average case discourage the institution of qui tam actions. The reason Congress gave a genuine informer a share in the recovery was to encourage qui tam actions in the interest of the government. It seems to me that a sensible application of the qui tam statute should bar the plea of a counterclaim against the informer.

*Rodriquez,* 74 F.Supp. at 769. Furthermore, by enacting the 1986 amendments to the FCA, Congress intended to encourage *qui tam* actions, and thus discourage fraud in the military industrial complex. *See Mortgages,* 934 F.2d at 212; *Madden,* Case No. CV–88–5352 WMB, at 4. The *Madden* court recognized that "[a]warding defendants damages which are nominally independent of defendants' own liability under the FCA hardly presents a meaningfully different result than simply setting off such damages directly against the defendant's liability, In either case, many potential *qui tam* plaintiffs could be discouraged from coming forward." *Madden,* Case No. CV–88–5351 WMB, at 4, 5; *see also Newsham,* 779 F.Supp. at 1254 ("to permit defendant to pursue a counterclaim for breach and contract and breach of loyalty for the failure to first raise its concerns with the alleged wrongdoer, would allow wrongdoers to retaliate against whistleblowers, and is contrary to legislative intent").

Despite this case precedent, we do not find it to be persuasive in the litigation now before this Court for two reasons. First, Piqua's counterclaims do not allege that the Plaintiffs were participants in the substantive FCA violations alleged by the Plaintiffs in Count I of their Complaint. Instead, Piqua's counterclaims pertain to Count II of the Complaint, which involves the Plaintiffs' personal claims for employment discrimination. In other words, Piqua does not contend in its counterclaims that the Plaintiffs participated in the alleged fraud underlying the Plaintiffs' Count I. Instead, Piqua avers in the counterclaim for breach of contract that Plaintiffs Barbara Burch and Lowell Kissinger breached their employment contracts by improperly performing their job duties. The remaining counterclaims for defamation, breach of duty of loyalty, breach of fiduciary duty, and breach of duty of fair dealing involve the Plaintiffs' actions in allegedly making false and damaging statements about Piqua to the media, based on information they acquired during the course of their employment with Piqua.

■ Second, the *Mortgages, Madden,* and *Newsham* decisions are not persuasive, because they may deny a defendant its constitutional right to due process. The Federal Rules of Civil Procedure provide that a counterclaim is compulsory if it arises out of the same transaction or occurrence as the plaintiff's claim. Fed.R.Civ.P. 13(a). A counterclaim will be considered compulsory if a logical relationship exists between the two claims, if the issues of fact and law raised by the claim and counterclaim are largely the same, or if substantially the same evidence would support or refute both the claim and the counterclaim. *Ashbrook v. Block,* 917 F.2d 918, 923, 924 (6th Cir.1990); *Maddox v. Kentucky Finance Co.,* 736 F.2d 380, 382 (6th Cir.1984).

■ In the case before the Court, the Plaintiffs alleged in Count II that they were fired or laid off as a result of bringing this *qui tam* lawsuit. In response, Piqua counterclaimed against the Plaintiffs for breach of contract, breach of duty of loyalty, breach of fiduciary duty, breach of duty of fair representation, and defamation. The evidence involving some of the Plaintiffs' claims will be substantially similar to the evidence regarding the Defendant's counterclaims. Therefore, we conclude that the Defendant's counterclaims are compulsory, because they arise out of the same transactions and occurrences as the Plaintiffs' claims.

■ Because the Defendant's counterclaims are compulsory, the Defendant may not assert these claims in a subsequent action. Charles Alan Wright, *The Law of Federal Courts* § 79 at 527 (4th ed.1983). In adopting and amending the FCA, Con-gress intended to encourage *qui tam* litigation in order to discourage fraud on the part of defense contractors. Nevertheless, in its effort to promote *qui tam* litigation, Congress may not circumvent the United States Constitution. *See Marbury v. Madison,* 1 Cranch 137, 2 L.Ed. 60 (1803). Consequently, the denial of any judicial forum in which a defendant may have its case heard deprives the defendant of its right to procedural due process. *See Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 429, 102 S.Ct. 1148, 1154, 71 L.Ed.2d 265 (1982).[4]

The Plaintiffs argue that the FCA provides Piqua with an effective remedy for its counterclaims. The Plaintiffs point out that a defendant ultimately may seek attorney's fees and expenses, upon a showing that the relator's action was "... clearly frivolous, clearly vexatious, or brought primarily for the purposes of harassment." 31 U.S.C. § 3730(d)(4) (1992). This provision, however, does not provide a remedy for all the damages that the defendant may have suffered.[5] As a result, a defendant may still be denied procedural due process.

Thus, we hold that counterclaims are not forbidden under the FCA. No provision of the FCA, or its legislative history, supports the proposition that a defendant may not raise a counterclaim. However, even if such a provision did exist, this Court would have grave concerns over its constitutionality, because its effect would be to deny a defendant the opportunity to have its compulsory counterclaim resolved in a judicial forum.

In making this decision, this Court does not wish to have a chilling effect upon the initiation of *qui tam* suits, thereby contra-

---

**4.** A simple example drives home the point. Relator Jones brings suit against defense contractor ABC for violations of the FCA and for wrongful discharge. While company ABC has been involved in defense fraud, company ABC fired Jones because she vandalized various equipment at ABC. Company ABC then brings a counterclaim against Jones for the resulting property damage from her vandalism. Company ABC's counterclaim is compulsory because it arises out of the same transaction and occurrence as Jones' claim for wrongful discharge. However, for a court to forbid counterclaims in FCA suits would prevent Company ABC from having its counterclaim judicially resolved. As such, Company ABC would be denied procedural due process on its property damage claim.

**5.** In using the example discussed in footnote 4, if precluded from bringing a counterclaim, company ABC would never be able to recover for its property damage caused by Jones' vandalism. Thus, 31 U.S.C. § 3730(d)(4) does not address the damages that the defendant may have suffered which are independent of defending the plaintiff's *qui tam* suit.

vening Congressional policy. Consequently, we now order that the trial on the Defendant's counterclaim will be separate from the Plaintiffs' claims, pursuant to Fed.R.Civ.P. 42(b). By ordering separate trials for the Plaintiffs' claim and the Defendant's counterclaims, this Court has attempted: (1) to advance the Congressional policy of encouraging *qui tam* actions in order to discourage fraud by defense contractors; and, (2) to protect the Defendant's constitutional right to procedural due process.

SO ORDERED.