**Richard M. YUHASZ, Plaintiff,**

v.

**BRUSH WELLMAN, INC.
et al., Defendants.**

No. 3:00CV7237.

United States District Court,
N.D. Ohio,
Western Division.

Dec. 14, 2001.

Charles M. Murray, Dennis E. Murray, Jr., Murray & Murray, Sandusky, OH, John J. Wargo, Wargo and Wargo, Berea, OH, for Richard M. Yuhasz, Plaintiff.

Denise M. Hasbrook, Roetzel & Andress, Toledo, OH, Dennis M. Kelly, Geoffrey J. Ritts, Jones, Day, Reavis & Pogue, Cleveland, OH, for Brush Wellman, Inc., James Feldhouse, Defendants.

Lawrence J. Kiroff, Office of U.S. Atty., Toledo, OH, for U.S.

## ORDER

CARR, District Judge.

Relator Richard M. Yuhasz brings this action against defendants Brush Wellman, Inc. ("Brush") and James Feldhouse claiming Brush violated the False Claims Act and wrongfully terminated plaintiff. This court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367 and 31 U.S.C. §§ 3732(a) and 3730(h). Pending is Brush's motion to dismiss pursuant to Fed. R.Civ.P. 12(b)(6) and 9(b). For the following reasons, Brush's motion shall be granted.

## BACKGROUND

By itself or through intermediaries, defendant Brush supplies "super" alloys, spinodal alloys, and other alloys to the United States for aerospace and military aviation uses. Some of Brush's alloys, supplied under requirements of and pursuant to contracts with the United States, are subjected to additional processing and/or manufacturing before they are delivered to the United States. Defendant Feldhouse is the manager of Brush's Lorain, Ohio Facility.

Relator worked for Brush as a laboratory manager between September, 1996, and January, 2000, at Brush's Lorain facility. The laboratory conducted chemical, mechanical, and physical testing of Brush's alloys. Relator's responsibilities included design and establishment of the testing laboratory, management of the laboratory, and conducting and supervision of testing procedures.

To receive payment under the contracts, Brush must submit reports, invoices, and certifications of compliance with technical specifications. Certification as to compliance with certain specifications and requirements includes certification under the Aerospace Materials Specifications, a government standard called the "QQC," and standards of the American Society for Testing and Materials. The certifications of compliance state, represent, and warrant that the alloys are in strict conformity with the specifications and that Brush is entitled to receive payment.

Relator brings this action alleging Brush violated the False Claims Act, 31 U.S.C. § 3729, *et seq*, by making false certifications by itself or through intermediaries. Relator also claims that Brush wrongfully

terminated him in retaliation for his allegations of wrongdoing by Brush.

## STANDARD OF REVIEW

No complaint shall be dismissed unless the plaintiff has failed to allege facts in support of plaintiff's claim that, construed in plaintiff's favor, would entitle the plaintiff to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). When deciding a motion brought pursuant to Fed.R.Civ.P. 12(b)(6), the inquiry is essentially limited to the content of the complaint, although matters of public record, orders, items appearing in the record, and attached exhibits also may be taken into account. *See Yanacos v. Lake County*, 953 F.Supp. 187, 191 (N.D.Ohio 1996). The court must accept all the allegations stated in the complaint as true, *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984), while viewing the complaint in the light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). A court, however, is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986).

## DISCUSSION

### I. Count One: False Claims Act

The False Claims Act ("FCA"), 31 U.S.C. § 3729(a), prohibits any person from:

> (1) knowingly present[ing], or caus[ing] to be presented, to an officer or employee of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval; [or] (2) knowingly mak[ing], us[ing], or caus[ing] to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government.

A person or entity that violates the FCA is liable "for (1) a penalty between $ 5,000 and $ 10,000 under the present provisions; (2) three times the amount of damages sustained by the government; and (3) costs of the civil action brought to recover the penalty or damages." *Kaminski v. Teledyne Indus., Inc.*, No. 96–3620, 1997 WL 415314, *2 n. 3, 1997 U.S.App. LEXIS 19192, at *9 n. 3 (6th Cir. July 21, 1997) (citing 31 U.S.C. § 3729(a)).

Relator claims Brush violated the FCA, through Brush's own acts or through intermediaries, by knowingly submitting false and fraudulent claims for payment and receiving payment for alloys not meeting government specifications. Relator claims that Brush had actual knowledge and/or acted in deliberate or reckless disregard or ignorance of the truth or falsity of its certifications because: 1) alloys did not meet specifications because of defects such as cracks; 2) certifications of compliance with technical specifications were false and fraudulent; 3) it used improper traceability and identifiability controls for alloys; 4) alloys were contaminated with beryllium; 5) it failed to perform required alloy tests; and 6) it lacked required internal controls, thereby preventing the tracing and identifying of alloys.

### A. Pleading Requirements for a FCA Claim

A complaint alleging a claim under the FCA must meet the heightened pleading requirements of Fed.R.Civ.P. 9(b). *See United States ex rel. Lee v. SmithKline Beecham, Inc.*, 245 F.3d 1048, 1050 (9th Cir.2001); *United States ex rel. Russell v. Epic Healthcare Mgmt. Group*, 193 F.3d 304, 308 (5th Cir.1999); *Gold v. Morrison–Knudsen Co.*, 68 F.3d 1475, 1476 (2d Cir. 1995); *United States ex rel. Cooper v. Blue Cross & Blue Shield of Florida, Inc.*, 19 F.3d 562, 567 (11th Cir.1994); *United*

*States ex rel. Schwartz v. Coastal Health-care Group, Inc.,* No. 99–3105, 2000 WL 1595976, *3, 2000 U.S.App. LEXIS 26914, at *9 (10th Cir. Oct. 26, 2000); *United States ex rel. Branhan v. Mercy Health Sys. of Southwest Ohio,* No. 98–3127, 1999 WL 618018, *2, 1999 U.S.App. LEXIS 18509, at *7 (6th Cir. Aug. 5, 1999). Rule 9(b) states, "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally."

▮ Both parties agree that *Coffey v. Foamex L.P.,* 2 F.3d 157 (6th Cir.1993), enumerates the basic requirements for pleading a fraud claim under Rule 9(b). (Doc. 31 at 14; Doc. 39 at 8). In *Coffey,* the court stated:

Fed.R.Civ.P. 9(b) requires that averments of fraud must be stated with particularity. The Sixth Circuit reads this rule liberally, however, requiring a plaintiff, at a minimum, to "allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud."

*Id.* (citing *Ballan v. Upjohn Co.,* 814 F.Supp. 1375, 1385 (W.D.Mich.1992) (citing *Michaels Bldg. Co. v. Ameritrust Co.,* 848 F.2d 674, 679 (6th Cir.1988))). The complaint must put a defendant on sufficient notice of the alleged misrepresentation so that a defendant can make an informed answer. *Id.* at 162 (citing *Brewer v. Monsanto Corp.,* 644 F.Supp. 1267, 1273 (M.D.Tenn.1986)). Rule 9(b) thus requires relator to allege the: 1) time, place, and content of the fraud; 2) the fraudulent scheme; 3) fraudulent intent; and 4) injury.

The parties disagree, however, on the interpretation of that standard.

Relator argues that Rule 9(b) is read liberally and that relator adequately has met the pleading requirements of *Coffey.* Relator concedes that the complaint does not cite a specific claim or contract at issue. (Doc. 31 at 23). Relator, however, contends that this absence does not justify dismissal under Rules 12(b)(6) and 9(b). Relator cites several cases in support of his argument that he need not specify the claim or contract at issue under Rule 9(b). Brush contends that other circuits, which use the same standard as set forth in *Coffey,* have held, under Rule 9(b), a FCA complaint must provide specific information about the false claims.

The issue is, therefore, whether a FCA claim can survive a motion to dismiss when the relator does not plead a specific false statement or a specific false claim made to the government. Neither party points to, and independent research has not uncovered, a Sixth Circuit case addressing this issue. I must, therefore, look to district courts and other circuits for guidance.

Relator discusses several cases purportedly supporting his argument, including: *United States ex rel. Roby v. Boeing Co.,* 184 F.R.D. 107 (S.D.Ohio 1998), *United States ex rel. Pogue v. American Healthcorp, Inc.,* 977 F.Supp. 1329 (M.D.Tenn. 1997), and *United States v. United Technologies Corp.,* No. C–3–99–093, 2000 WL 988238, 2000 U.S. Dist. LEXIS 6219 (S.D.Ohio Mar.20, 2000). Although these cases allowed a FCA claim to survive a motion dismiss under Rule 9(b), each is distinguishable.

In *United Technologies,* the plaintiff alleged that the defendant submitted a false claim through a contract bid which overstated the prices to be charged by the defendant's subcontractors. Defendant moved to dismiss for failure to comply with Rule 9(b). The court found that the plain-

tiff pleaded fraud with particularity because the plaintiff pleaded: 1) the circumstances of fraud; 2) that the cost to the plaintiff was higher because of wrongful conduct; and 3) that throughout performance of the subsequent contract, the bills and invoices were based on the initial overstatement of prices, thereby allowing the defendant to identify the invoices and bills. 2000 WL 988238, **8–9, 2000 U.S. Dist. LEXIS 6219, at *27. The court did not require the plaintiff to allege the particulars of each invoice or bill. *Id.* at *9, 2000 U.S.Dist. LEXIS, *28.

Relator contends that *United Technologies* stands for the proposition that, because the defendant was not required to plead the specifics of each invoice, relator does not have to plead the specific false claims and fraudulent acts in this case. In *United Technologies*, however, the fraudulent document and contract at issue were clear and the parties involved were known. In the present action, relator points to no specific parties (other than Brush), contracts, or fraudulent acts.

In *Roby*, the relator alleged that the defendant violated the FCA by knowingly installing defective transmission gears in its CH–47(D) Chinook Army helicopters which were provided to the United States. The defendant moved to dismiss, arguing that relator did not meet Rule 9(b) because relator did not allege the specific false content associated with the false claims and forced the defendant to speculate about which gears did not conform. The court concluded that the complaint adequately pleaded a FCA claim because it did not require the defendant to speculate about which gears allegedly were defective. 184 F.R.D. at 110 ("[T]he Government's Amended Complaint provides at Paragraph 141 that Boeing acted with the knowledge of falsity or reckless disregard for the truth with respect to every CH–

47(D) helicopter it delivered to the United States under Forms DD–250.").

Relator contends that *Roby* stands for the proposition that, because the defendant was not required to plead the specific product claimed to be defective, relator does not have to plead the specific false claims and fraudulent acts in this case. Relator argues that *Roby* controls and relator does not have to plead specific fraudulent acts because "virtually every alloy certified by Brush during the times specified in the Complaint was non-compliant because of the inability to identify its lot, the improper testing procedures, and the potential for beryllium contamination." (Doc. 31 at 25). In *Roby*, the relator identified the particular contract at issue and provided information on when, where, and how false statements were made to the government because relator alleged they were made by DD–250 forms. Relator in this case provides no such information.

In *Pogue*, the relator alleged that the defendants engaged in a scheme to defraud the government of Medicare and Medicaid funds. The defendants moved to dismiss for failure to satisfy Rule 9(b), alleging "the Fourth Amended Complaint still fail[ed] to specify 'when, where or how Plaintiff contends West Paces learned of this alleged fraud, or the identity of, or position held by, the person or persons who had such knowledge, and whose knowledge should be attributed to West Paces.'" 977 F.Supp. at 1332. The court found that the complaint adequately alleged a fraudulent scheme. *Id.* at 1333.

Relator contends that *Pogue* stands for the proposition that, because the defendants were not required to plead the specific dates on which claims were submitted, relator does not have to plead specific false claims and fraudulent acts. In *Pogue*, however, the relator pointed to specific

parties and contracts during a specific time period. Relator in this case does not point to specific parties involved in the contracts other than Brush.

Two other district court cases within the Sixth Circuit are instructive of the pleading requirements for a FCA claim.

In *Pickens v. Kanawha River Towing*, 916 F.Supp. 702, 704–05 (S.D.Ohio 1996), the plaintiff alleged the defendant-subcontractors, without acknowledging that they violated the Clean Water Act by dumping bilge into the Ohio River, violated the FCA by submitting bills to a general contractor, who then submitted a bill to the government. The defendants moved to dismiss for failure to plead fraud with particularity under Rule 9(b). The court denied the defendants' motion because the complaint described the parties involved, the "exact contract at issue," the contract provision that pertained to alleged misconduct, and the approximate time of the alleged misconduct. *Id.* at 706. Unlike the plaintiff in *Pickens*, relator has not identified the contracts at issue or the specific parties involved (other than Brush), and therefore, has not identified the specific false claim involved.

In *Burch ex rel. United States v. Piqua Engineering, Inc.*, 145 F.R.D. 452, 453 (S.D.Ohio 1992), the relators alleged that defendant violated the FCA by failing to use contractually-prescribed testing procedures and quality standards for missile

detonators and other parts sold to the government. Relators alleged that defendant falsely certified it met the testing and quality standards. The defendant moved to dismiss claiming that relator did not plead fraud with particularity. The court granted defendant's motion because relators failed to provide notice of the precise fraudulent act at issue. *Id.* at 455.

The court stated that relators' general language in reference to practices used by defendant and false test and inspection certifications failed to place defendant on notice. *Id.*[1] The court further stated that relators' allegation that defendant violated " 'one or more of [defendant's] contracts with the United States Government" ' did not give defendant sufficient notice about which contract was at issue. *Id.* ("The Plaintiffs, as assembly line workers, may have had access to internal contract numbers. If so, the Plaintiffs should include this information in their Complaint.").

Just as the relators failed to plead with particularity and put defendant on notice in *Burch*, relator's general language of a FCA violation, without pointing to a specific claim or contract, does not pass muster under Rule 9(b) in this case.

Decisions from courts outside the Sixth Circuit also provide guidance because they directly address the issue of whether a claim is pleaded adequately when it does not state a specific false claim submitted to

---

1. The court stated:

    Specifically, in Paragraph 14, the Plaintiffs allege that the Defendant deviated " . . . from Government quality standards including, but not limited to, the following:," after which they list a series of deficiencies. . . . Similarly, in Paragraph 15, the Complaint states that "the Relators discovered false test and inspection certifications including, but not limited to the following:," after which they list a number of fraudulent inspection practices used by Piqua. . . . In us-

    ing the language of "including, but not limited to," the Plaintiffs have failed to place Piqua on notice of the company's precise misconduct or fraudulent acts at issue in this lawsuit. . . . As a result, the Plaintiffs have not pleaded fraud with particularity. *Burch*, 145 F.R.D. at 455 (citing Amended Complaint, doc. 29, at ¶ 14, 15 (emphasis added); *Cincinnati Gas & Elec. Co. v. General Elec. Co.*, 656 F.Supp. 49, 76 (S.D.Ohio 1986)).

the government or plead a specific false statement.

In *United States ex rel. Russell v. Epic Healthcare Management Group,* 193 F.3d 304, 306 (5th Cir.1999), the relator sued for a violation of the FCA. The Fifth Circuit found that the district court correctly dismissed the claim for failure to plead fraud with particularity. *Id.* at 308. The court stated:

> The conduct to which liability attaches in a False Claims Act suit consists in part of false statements or claims for payment presented to the government.... Because such statements or claims are among the circumstances constituting fraud in a False Claims Act suit, these must be pled with particularity under Rule 9(b).

*Id.* (citing *United States ex rel. Harrison v. Westinghouse Savannah River Co.,* 176 F.3d 776, 785 (4th Cir.1999)). The Fifth Circuit thus required a relator to plead the claims submitted to the government with particularity.

In *United States ex rel. Schwartz v. Coastal Healthcare Group, Inc.,* No. 99–3105, 2000 WL 1595976, *1, 2000 U.S.App. LEXIS 26914, at *2 (10th Cir. Oct. 26, 2000), the relator alleged that defendants presented false claims by violating provisions of the Medicare Act. The Tenth Circuit concluded that the complaint failed to satisfy the particularity requirements of Rule 9(b). *Id.* at *4, 2000 U.S.App. LEXIS 26914, *13. The court stated:

> In his claim that the anti-kickback laws were violated, Dr. Schwartz alleges that Coastal entered into "contracts" with "hospitals" from 1985 until the present time.... He does not identify any particular hospital or physician who signed such an agreement, nor does he identify any time when a false or fraudulent claim was presented.

. . . . .

Even with respect to the one particular contract he identifies in paragraph 35, he describes only the generalities of how it operated, and nowhere does he identify a physician or a specific occasion when the practice resulted in a kickback or other illegal activity.

*Id.* at *5, 2000 U.S.App. LEXIS 26914, **13–15. The court concluded that such general allegations did not comply with Rule 9(b).

In *United States ex rel. Butler v. Magellan Health Services, Inc.,* 101 F.Supp.2d 1365, 1367 (M.D.Fla.2000), the plaintiff alleged that defendants submitted false claims to the United States Department of Health and Human Services, under Medicare, and to the Department of Defense, under the Civilian Health and Medical Program of the Uniformed Services ("CAMPUS"). The court determined that the plaintiff's allegations did not fulfill Rule 9(b) requirements. The court stressed that plaintiff "merely alleges a scheme of fraud, and not specific occurrences or facts which support this general scheme." *Id.* at 1369. The court thus found that because plaintiff only pleaded a fraudulent scheme and did not "reference[ ] or produce[ ] any such documents which would support false claims to the government," the plaintiff could not meet particularity requirements. *Id.*

In *United States ex rel. Walsh v. Eastman Kodak Co.,* 98 F.Supp.2d 141, 143 (D.Mass.2000), the relator alleged that defendants caused false claims to be submitted by failure to report or misreporting discounts on supplies purchased by other defendants. The complaint did not allege the specific cost reports or transactions involved. Because of this omission, the court found that the complaint did not satisfy Rule 9(b). *Id.* at 147. The court stated:

Relator's First Amended Complaint, in essence, sets out a methodology by which the vendors might have produced false invoices, which in turn could have led to false claims. Without citing a single false claim arising from an allegedly false invoice, Relator has not met even a bare-bones Rule 9(b) test.

*Id.* (citation omitted); *see also United States ex rel. Clausen v. Laboratory Corp. of Am.,* 198 F.R.D. 560, 563 (N.D.Ga.2000) ("Plaintiff has failed to identify a single claim that was actually submitted pursuant to the allegedly fraudulent schemes .... Plaintiff has set out the process by which Defendants could have produced false claims, but provides no facts that this process did in fact result in the *submission* of false claims.") (emphasis in original).

In *United States ex rel. Cox v. Iowa Health System,* 29 F.Supp.2d 1022, 1025 (S.D.Iowa 1998), the relator claimed defendants conducted false billing practices and overcharged the government through Medicare, Medicaid, and CAMPUS claims by charging for miles that air ambulances actually did not fly. The court determined that because relator did not allege that all of the bills contained overcharges, the relator had to plead the specific fraudulent claims submitted. *Id.* ("Because relator did not set forth in his pleadings the precise claims submitted to the United States, in which defendants allegedly charged the United States for mileage not actually flown, the Court must dismiss relator's claim for its failure to satisfy Rule 9(b).").

The present case is similar to these cases. Like the relator in *Cox,* relator here does not allege that every alloy resulted in a false claim. (Doc. 31 at 25 ("[V]irtually every alloy certified by Brush during the times specified in the Complaint was non-compliant because of the inability to identify its lot, the improper testing procedures, and the potential for beryllium contamination.")). Under Rule 9(b) as interpreted in false claims cases, the relator is required to plead the false claims with specificity. Relator has not identified or otherwise specified the false claims submitted to the government; instead, relator alleges a general fraudulent scheme or methodology.

Relator argues that the Rule 9(b) specificity requirements should be relaxed because: 1) the allegations describe events that occurred over a long period of time and include many acts; and 2) Brush exclusively possesses specific details and discovery would uncover them. Brush argues that a relator may not use discovery to uncover information that was required in the complaint under Rule 9(b). Brush further argues that relator admits that Brush does not possess exclusively the relevant information because only downstream alloy processors know whether Brush's alloys were incorporated into products sold to the government.

Some courts have stated that specificity requirements should be relaxed if the alleged fraud occurred over a long period of time and consisted of many acts. *See United Techs.,* 2000 WL 988238, *7, 2000 U.S. Dist. LEXIS 6219, at *23 (citing *Butler v.,* 74 F.Supp.2d at 1215; *United States ex rel. Thompson v. Columbia/HCA Healthcare,* 20 F.Supp.2d 1017, 1039 (S.D.Tex.1998); *Hurd v. Monsanto Co.,* 908 F.Supp. 604, 614 (S.D.Ind.1995); *Fujisawa Pharm. Co. v. Kapoor,* 814 F.Supp. 720, 726 (N.D.Ill.1993)).

Other courts have declined to relax the standard. In *Clausen,* 198 F.R.D. at 562–63, for example, the court stated:

At the outset, the Court concludes that it should not apply a relaxed pleading standard in this case. Plaintiff made the decision to allege a nationwide fraud scheme extending back as far as 1990. He should not be allowed to evade the

command of Rule 9(b) by relying upon the complexity of the edifice which he created.

The court also determined not to apply a relaxed standard because the facts were not exclusively within the defendant's possession. *Id.* at 563. Courts have cautioned that the relaxing of Rule 9(b) is a relator's "ticket to the discovery process that the [FCA] itself does not contemplate." *Russell,* 193 F.3d at 309. Court also have cautioned that a less stringent application of Rule 9(b) " 'must not be mistaken for license to base claims of fraud on speculation and conclusory allegations.' " *Thompson,* 125 F.3d at 903 (citing *Tuchman v. DSC Communications Corp.,* 14 F.3d 1061, 1068 (5th Cir.1994)).

Like the plaintiff in *Clausen,* relator should not be able to avoid the specificity requirements of Rule 9(b) by "relying upon the complexity of the edifice which he created." *Clausen,* 198 F.R.D. at 563. Relator cannot avoid Rule 9(b) by asserting a conclusory allegation that Brush submitted false claims based on allegations of a general scheme of fraud.

Relator's argument that Rule 9(b) should be relaxed because Brush exclusively possesses information likewise is not well-taken. In the Sixth Circuit, "Courts have held that the rule may be relaxed where information is only within the *opposing party's* knowledge." *Michaels Bldg. Co. v. Ameritrust Co.,* 848 F.2d 674, 680 (6th Cir.1988) (emphasis added). Relaxation of Rule 9(b) is thus contingent on the opposing party's exclusive possession of the information.

Relator, however, admits that third parties, at least with respect to the alleged false claims that were filed by intermediaries, have possession of information on the alleged false claims. Relator states:

To require a plaintiff to set forth, at this stage of the litigation, the specifics of a claim that was indirectly submitted to the United States would make it all but impossible to impose liability on those who *cause* a false claim to be submitted, rendering the plain language of the statute meaningless. Relator has pled all the facts that he knows—and/or *nearly all that BW knows.*

(Doc. 31 at 23) (first emphasis in original).

Under the rule set forth in *Michaels,* therefore, relator is not entitled to a relaxed standard because the information he seeks is not exclusively in the possession of Brush. *See e.g., Russell,* 193 F.3d at 308 ("The district court found that Russell was not entitled to the relaxed standard because documents containing the requisite information were possessed by other entities, such as the Healthcare Financing Administration. We agree.").

Relator, therefore, did not allege a FCA claim with sufficient particularity as required under Rule 9(b). Relator did not state a specific false claim submitted to the government. Relator, furthermore, is not entitled to a relaxed Rule 9(b) standard for alleging acts occurring over an extended period of time or for stating information is exclusively within Brush's possession. Brush's motion to dismiss count one under Rule 12(b)(6) shall be, therefore, granted.

## II. Count Two: Retaliatory Discharge

Relator claims that Brush violated 31 U.S.C. § 3730(h) by discharging him in retaliation for refusal to participate in Brush's submission of false and fraudulent claims.

The FCA protects employees who pursue or investigate an employer's submission of a false claim to the government. Section 3730(h) provides:

Any employee who is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated

against in the terms and conditions of employment by his or her employer because of lawful acts done by the employee on behalf of the employee or others in furtherance of an action under this section, including investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under this section, shall be entitled to all relief necessary to make the employee whole.

To establish a claim for retaliatory discharge, relator must show: 1) he engaged in protected activity; 2) Brush knew that relator engaged in the protected activity; and 3) Brush discharged relator because of the protected activity. *McKenzie v. Bell-South Telecomm., Inc.,* 219 F.3d 508, 514 (6th Cir.2000). Brush contends that the complaint fails to state the first two elements of retaliatory discharge.

## A. Engaging in Protected Activity

■ Brush argues that relator fails to state a claim for retaliatory discharge because relator failed to state that he engaged in protected activity. I disagree.

Protected activity is activity done "in furtherance of an action under [the FCA], including investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under this section." 31 U.S.C. § 3730(h). In discussing the meaning of protected activity, the Sixth Circuit has stated that internal reporting of suspected fraud can constitute protected activity so long as it establishes a nexus to the FCA. *McKenzie,* 219 F.3d at 517. The court stated, "Although internal reporting may constitute protected activity, the internal reports must allege fraud on the government." *Id.* at 516 (citations omitted). Protected activity, however, requires more from an employee than urging an employer to comply with the law. *United States ex rel. Hopper v. Anton,* 91 F.3d 1261, 1269 (9th Cir.1996) ("Hopper was merely attempting to get the School Dis-

trict to comply with Federal and State regulations. She was not trying to recover money for the government .... She was not investigating fraud. She was not whistleblowing as envisioned in the paradigm *qui tam* FCA action.").

The complaint states that relator engaged in actions

in furtherance of a claim under the False Claims Act, including the investigation of the predicate facts underlying such claim .... Included within such activities on the part of [relator] are the observance of inappropriate controls and procedures on behalf of [Brush] as alleged herein, the investigation of same, and the reporting of the results of such observations and investigations to [Brush].

(Doc. 1 at ¶ 102).

Based on the complaint's allegations that relator conducted an investigation in furtherance of an FCA claim, I cannot dismiss count two on the argument that relator failed to state a claim that he engaged in protected activity.

## B. Employer Knowledge

■ Brush argues that relator fails to state a claim for retaliatory discharge because relator failed to allege that Brush had the required notice of relator's participation in protected activity. I agree.

The Sixth Circuit has stated an employee must put an employer on notice that an employee's complaints "could reasonably lead to a *qui tam* action." *McKenzie,* 219 F.3d at 518. The court stated:

"Merely grumbling to the employer about job dissatisfaction or regulatory violations does not satisfy the requirement—just as it does not constitute protected activity in the first place. Threatening to file a qui tam suit or to make a report to the government is one

way to make an employer aware. But it is not the only way."

*McKenzie*, 219 F.3d at 518 (quoting *United States ex rel. Yesudian v. Howard Univ.*, 153 F.3d 731, 743 (D.C.Cir.1998)).

In *United States ex rel. Ramseyer v. Century Healthcare Corp.*, 90 F.3d 1514, 1522 (10th Cir.1996) (citation omitted), the court stated, "When seeking legal redress for retaliatory discharge ..., plaintiff has the burden of pleading facts which would demonstrate that defendants had been put on notice that plaintiff was either taking action in furtherance of a private qui tam action or assisting in an FCA action brought by the government." The court affirmed the district court's grant of defendants' motion to dismiss because the plaintiff did not plead facts that put defendants on notice. *Id.* at 1523. The court stated that while plaintiff informed her supervisors of failure to comply with Medicaid requirements, plaintiff did not suggest that she would use the noncompliance in furtherance of an FCA action. *Id.* The court stated that the complaint only alleged activities that plaintiff was required to undertake through her ordinary job responsibilities and, therefore, plaintiff did not put defendants on notice of a FCA claim. *Id.*

Other courts have likewise held that notice to an employer means more than awareness of an employee's ordinary job duties where those duties include investigating compliance with regulations. *See Eberhardt v. Integrated Design & Constr., Inc.*, 167 F.3d 861, 868 (4th Cir.1999) (employees who are required to investigate fraud " 'must make clear their intentions of bringing or assisting in a [False Claims Act] action in order to overcome the presumption that they are merely acting in accordance with their employment obligations' ") (citing *Ramseyer*, 90 F.3d at 1523 n. 7); *Robertson v. Bell Helicopter Textron, Inc.*, 32 F.3d 948, 952 (5th Cir.

1994) (no notice because plaintiff believed his investigation was part of his job duties and did not change his conduct when he later considered filing a FCA action).

The complaint states, "[Brush] hired [relator] to design and establish, and then operate as manager, a testing laboratory for its Lorain facility.... The laboratory was established to conduct certain chemical, mechanical and physical testing of [Brush's] alloys. [Relator] also established the specifications for the laboratory equipment." (Doc. 1 at ¶ 15). The complaint also states, "[Relator] conducted and or [sic] supervised testing procedures for [Brush's] Lorain facility." (Doc. 1 at ¶ 16). The complaint further states, "On or about August, 1998, [relator] was appointed as the [Brush] employee charged with submitting the required certifications of compliance with the technical specifications of the alloys.... [Relator] had extensive experience with regard to certification procedures and requirements in government contracting." (Doc. 1 at ¶¶ 28–29).

Brush argues that the complaint does not allege protected activity, "but rather the very work a quality-control lab manager would normally perform, just as writing memos 'explor[ing]' 'issues regarding contamination of alloys' would be." (Doc. 24 at 11 (citing Doc. 1 at ¶ 47)). I agree. Because relator's job duties already included investigation and supervision of testing procedures and submitting certifications of compliance, he was required to demonstrate a clear intent to bring a FCA action.

The complaint states, "[Relator] specifically informed and advised [Brush] of the unlawful and illegal nature of its certifications of compliance. [Relator] specifically raised with [Brush], through Feldhouse, that other companies had incurred liabilities under the False Claims Act for submission of false and fraudulent claims." (Doc. 1 at ¶¶ 102–03). These statements

do not suffice to allege Brush's notice of relator's intent to pursue or assist in a FCA claim. They simply state that relator, when urging compliance, was merely acting with the scope of his duties. Relator has not stated a claim alleging facts where he clearly demonstrated an intent to pursue or assist in a FCA claim. Relator thus has not stated a claim for retaliatory discharge under the FCA.

Brush's motion to dismiss count two shall be granted.

### III. Count Three: Wrongful Discharge

■ Relator alleges that Brush wrongfully discharged him under Ohio common law and public policy for his refusal to obey Brush's directives allegedly to violate applicable laws and regulations. Relator contends the public policy is found in the FCA's provision prohibiting retaliatory discharge, 31 U.S.C. § 3730(h), and the Federal Acquisition Regulations.

Brush contends that because the complaint fails to state a FCA claim, the complaint also fails to state a claim that Brush wrongfully discharged relator in violation of public policy. I agree.

The Ohio Supreme Court allows an exception to the employment-at-will doctrine when an employee is discharged for a reason prohibited by a clear public policy, as found in a statute, the common law, or another source. *Kulch v. Structural Fibers, Inc.*, 78 Ohio St.3d 134, 150, 677 N.E.2d 308 (1997). A plaintiff must establish: 1) a "clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law;" 2) that "dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy;" 3) "the plaintiff's dismissal was motivated by conduct related to the public policy;" and 4) "the employer lacked overriding legitimate business justification for the dismissal."

*Painter v. Graley*, 70 Ohio St.3d 377, 384 n. 8, 639 N.E.2d 51 (1994).

In *Parry v. Mohawk Motors of Michigan, Inc.*, 236 F.3d 299, 312 (6th Cir.2000), the court determined, however, that a plaintiff was precluded from claiming a wrongful discharge claim in violation of Ohio public policy when the public policy stemmed from the Americans with Disabilities Act ("ADA") and the ADA claim was dismissed. The court stated, "Plaintiff, having failed to show a viable claim under the ADA, is necessarily precluded from claiming that his termination violated Ohio public policy." *Id.* (citation omitted).

In *Arsham–Brenner v. Grande Point Health Care Community*, No. 74835, 2000 WL 968790, at *7 (Ohio App. July 13, 2000), the court similarly held that a plaintiff could not maintain a claim for wrongful discharge in violation of public policy. The court stated, "Conversely, when the employee's discharge is not actionable under the law that establishes the 'clear public policy,' the companion common-law claim for relief likewise fails as a matter of law." *Id.*

Because relator's claim under the FCA, which provides the public policy for relator's wrongful discharge claim, must be dismissed, relator's wrongful discharge claim also must be dismissed. Relator argues that I must follow *Plant v. Morton International, Inc.*, 212 F.3d 929 (6th Cir. 2000). Relator contends this case stands for the rule that a wrongful discharge claim is valid so long as relator falls within the class of persons the statute was designed to protect. I must follow the Sixth Circuit's rationale in *Parry*, which was decided subsequent to *Plant*, wherein the court stated that a wrongful discharge claim cannot be maintained if the companion claim, establishing the public policy,

cannot be maintained.[2]

Brush's motion to dismiss count three shall be, therefore, granted.

## CONCLUSION

It is, therefore,

**ORDERED THAT**

Defendant's motion to dismiss be, and hereby is, granted.

**So ordered.**

---

**2.** Brush's argument, that relator is not a member of the class protected by the statute, furthermore, is well-taken. The FCA protects relator from retaliatory discharge if he put the employer on notice of his intent to pursue or assist in a FCA claim. As stated, relator did not provide Brush with notice of his intent. *See supra* part II.B.